801 So.2d 331 (2001)
Lisa VASALLE and Renelle VaSalle
v.
WAL-MART STORES, INC., et al.
No. 2001-C-0462.
Supreme Court of Louisiana.
November 28, 2001.
Rehearing Denied January 11, 2002.
*332 Marianne Garvey, Dominic J. Gianna, Middleberg, Riddle & Gianna, New Orleans, Counsel for Applicant.
Jere J. Bice, Donald W. McKnight, Raleigh Newman, Lake Charles, Counsel for Respondent.
KIMBALL, Justice.[*]
We granted certiorari to determine whether the district court had the right to *333 reconsider its ruling giving defendants the choice between additur and new trial and, after defendants chose a new trial, subsequently grant plaintiffs' motion for judgment notwithstanding the verdict ("JNOV"). For the reasons that follow, we conclude the district court had the right to reconsider its interlocutory rulings prior to the signing of a final judgment. We further conclude that the jury's verdict was reasonably based on the evidence presented at trial and plaintiffs were not entitled to JNOV or a new trial.

FACTS AND PROCEDURAL HISTORY
On October 2, 1995, Lisa VaSalle was shopping in a Wal-Mart store located in Moss Bluff, Louisiana. As she stooped down in front of a magazine rack, Ms. VaSalle was struck by a shopping cart being pushed by a Wal-Mart employee. Initially, Ms. VaSalle did not report any injuries and did not seek immediate medical treatment. Later, however, Ms. Va-Salle consulted with a doctor who had treated her for a previous back injury. After a period of conservative treatment, Ms. VaSalle's doctor ultimately recommended that she undergo back surgery.
Ms. VaSalle and her husband filed the instant suit against Wal-Mart Stores, Inc., its employee, Glenn Goodeaux, and its insurer, National Union Fire Insurance Company of Pittsburgh, Pennsylvania (collectively referred to as "Wal-Mart" or "defendants"). The matter was tried before a jury in September 1998. At the close of the evidence, the district court entered a directed verdict in favor of plaintiffs on the issue of liability, finding that Wal-Mart was 100% at fault in causing Ms. VaSalle's accident and resultant injuries. Subsequently, the jury awarded plaintiffs a total of $70,000 in damages, including $15,000 in past medical expenses, $20,000 in future medical expenses, $25,000 in pain and suffering, and $10,000 in future loss of earning capacity. The jury made no awards for permanent disability or for Mr. VaSalle's loss of consortium.
After the district court signed a judgment in conformity with the jury's verdict, plaintiffs filed a timely motion for JNOV, or alternatively for additur or new trial. After a contradictory hearing on the motion, the district court, on January 29, 1999, signed a ruling entitled "Opinion" wherein it found that the jury's award was inadequate and that additur was warranted. The court determined plaintiffs were entitled to a total of $426,628.69 in damages, including $15,128.69 in past medical expenses, $32,000 in future medical expenses, $250,000 in pain and suffering and disability, $114,500 in future loss of earning capacity, and $15,000 in loss of consortium. The district court gave Wal-Mart fifteen days to request a new trial or agree to the additur. The court's "Opinion" concluded with the sentence, "A judgment to this effect will be signed when presented."
On February 5, 1999, Wal-Mart filed a motion objecting to the additur and requesting a new trial. Attached to Wal-Mart's motion was a proposed order granting plaintiffs' motion for a new trial and re-fixing the case for trial. The district court never acted on this order. On February 18, 1999, plaintiffs filed a motion seeking reconsideration of their original motion for JNOV, which had not been mentioned in the trial court's January 29, 1999 "Opinion." Following another contradictory hearing, the district court signed a judgment granting a JNOV and awarding plaintiffs damages in the total amount of $426,628.69, the same amount set forth in the January 29, 1999 "Opinion." In a separate "Opinion" signed on March 30, 2000, the district court stated that the jury's award was abusively low *334 and JNOV was therefore warranted. The court noted that it had reached the conclusion that the jury's award was unquestionably low in its previous "Opinion," and that a miscarriage of justice would result if the jury's award was allowed to stand.
Wal-Mart appealed the district court's judgment. In an opinion not designated for publication, the court of appeal affirmed. VaSalle v. Wal-Mart Stores, Inc., 00-0950 (La.App. 3 Cir. 12/6/00), 778 So.2d 108. The court of appeal found that because the district court's January 29, 1999 "Opinion" was never reduced to judgment, Wal-Mart's right to a new trial under La. C.C.P. art. 1814[1] did not attach. Moreover, the court of appeal reasoned, the judgment reflecting the jury's verdict was not reformed by the district court's January 29, 1999 "Opinion" because Wal-Mart never consented to the additur and the damage award therefore remained at $70,000. Based on this reasoning, the court of appeal determined that Wal-Mart was not entitled to a new trial under art. 1814. Next, the court of appeal concluded that the district court properly granted plaintiffs' motion for JNOV and did not abuse its vast discretion in awarding $426,628.69 in damages.
We granted certiorari upon Wal-Mart's application to consider the correctness of the court of appeal's judgment. VaSalle v. Wal-Mart Stores, Inc., 01-0462 (La.4/20/01), 790 So.2d 8.

LAW AND DISCUSSION
In its first assignment of error, Wal-Mart contends that the trial court's January 29, 1999 ruling granting the additur was a final, appealable judgment. Thus, Wal-Mart argues, the court's judgment granting the JNOV made a substantive change to that earlier judgment in violation of La. C.C.P. art. 1951, which allows amendment of a final judgment only to alter the phraseology of the judgment, but not the substance, or to correct errors of calculation.[2] Wal-Mart further contends that the district court's grant of JNOV effectively eliminated its right to a new trial provided by La. C.C.P. art. 1814. For the reasons that follow, we find Wal-Mart's arguments are without merit, primarily because the court's January 29, 1999 ruling, giving defendants a choice between additur and new trial, was not a final, appealable order.
It is well-settled that prior to final judgment a district court may, at its discretion and on its own motion, change the result of interlocutory rulings it finds to be erroneous. Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328, 332 (1972) ("[I]nterlocutory orders overruling... peremptory exceptions cannot be binding upon the trial court when it *335 timelybut laterdetermines error of judgment based upon the matter as submitted or upon subsequent disclosures in the record which require a contrary holding."); Labourdette v. Doullut & Williams Shipbuilding Co., 156 La. 412, 100 So. 547, 548 (1924) ("The judge had the right ... at the stage of the proceeding at which the objection was made, to set aside that [interlocutory] decree, even of his own motion, and thereafter to sustain the exception, upon finding that he had erred in overruling it."); Register v. Harrell, 131 La. 983, 60 So. 638, 639 (1912) ("We can only hold that it was still in the power of the court to recall the prior erroneous ruling and reject the testimony offered on the ground that the petition of plaintiffs did not aver a cause of action."); Hamilton v. His Creditors, 25 So. 965, 966 (La. 1898) ("The judgment of this court, however, denying the motion to dismiss, is to be regarded as in the nature of an interlocutory order, subject to revision in the rendition of the final judgment on the merits."); State ex rel. Leche v. Fowler, 7 So. 180, 181 (La.1889) ("If not a definitive judgment, it is an interlocutory judgment, and as such is revisable by the court before final adjudication. It has been settled by frequent rulings that where a court, whether of original or appellate jurisdiction, discovers that an order given by it is erroneous it may itself set it aside without any formal motion."). See also Muller v. Muller, 94-281 (La.App. 3 Cir. 10/5/94), 643 So.2d 478; Lee v. East Baton Rouge Parish Sch. Bd., 623 So.2d 150 (La.App. 1 Cir.1993); Bordelon v. Dauzat, 389 So.2d 820 (La.App. 3 Cir.1980); Grady v. Allstate Ins. Co., 355 So.2d 1070 (La.App. 4 Cir.1978); Arnold v. Stupp Corp., 249 So.2d 276 (La.App. 1 Cir.1971). Because courts have this right, we must determine whether the district court's ruling giving defendants the option to agree to an additur or submit to a new trial was an interlocutory ruling. If it was an interlocutory ruling, then it was subject to recall by the judge prior to final judgment. If, on the other hand, the ruling was a final, appealable judgment, then the district court would not be free to overrule it upon plaintiffs' motion.
La. C.C.P. art. 1841 provides that a final judgment is one that determines the merits in whole or in part. Concomitantly, a judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment. La. C.C.P. art. 1841. Article 1814, which provides for remittitur and additur, does not address the status to be afforded the ruling by the trial court giving a party a time limit within which he may consent to the additur or remittitur. Furthermore, this court has never addressed this issue. Consequently, we may look to other jurisdictions with similar rules for guidance in making this determination.
An issue similar to that raised in the instant case has recently been addressed by the Sixth Circuit Court of Appeals. In Anderson v. Roberson, 249 F.3d 539 (6th Cir.2001), the court of appeals explained that a district court's order giving plaintiff a choice between remittitur or a new trial is not a final, appealable order.[3] In that *336 case, the federal appellate court dismissed an appeal taken after the district court granted defendants' motion for remittitur, giving plaintiffs a choice between remittitur and new trial, but before the district court entered an order based upon plaintiffs' election.[4] In reaching this decision, the court explained that the parties' notices of appeal were premature as follows:
Once the district court entered its order giving the plaintiffs the choice between accepting the remittitur or having a new trial, there was no final order from which the parties could appeal. The parties appear to believe that the plaintiffs' actioneither accepting or rejecting the remittiturends the district court's jurisdiction and opens the door for the case to proceed on appeal. The parties are mistaken. Except for those well-defined occasions when we have jurisdiction over an interlocutory appeal,... we do not have jurisdiction over an appeal until the district court issues a final, appealable order.... Until the district court either enters a final order based upon the plaintiffs' election to accept the remittitur, or proceeds to judgment after a new trial, there is nothing for this court to review.
Id. at 542-43 (citations omitted). The Sixth Circuit's view is in accord with that of other courts of appeals which have held that the district court's ruling offering a party the choice between remittitur and new trial is incomplete, interlocutory, and not appealable. See, e.g., Higgins v. Smith Int'l, Inc., 716 F.2d 278 (5th Cir. 1983) (disavowed on other grounds by Overman v. Fluor Constructors, Inc., 797 F.2d 217 (5th Cir.1986)); Eaton v. National Steel Prods. Co., 624 F.2d 863 (9th Cir.1980); Evans v. Calmar S.S. Co., 534 F.2d 519 (2d Cir.1976).
The reasoning of the Anderson court is sound and we agree with it. The district court's January 29, 1999 ruling giving defendants a choice between additur and new trial was not a final judgment. The ruling did not determine the merits of the action. Rather, as provided for by La. C.C.P. art. 1814, it gave defendants a time limit within which they could consent to an additur as an alternative to a new trial and, as such, was an interlocutory ruling. As explained above, defendants' motion rejecting the additur and requesting a new trial did not end the matter. The district court never entered a final order based upon defendants' election. Instead, it declined to sign defendants' proposed order granting a new trial and, choosing to set aside its January 29, 1999 interlocutory ruling, granted plaintiffs' previously-urged motion for JNOV. In making this decision, the trial court acted within its authority because its ruling giving defendants the option to agree to an additur or submit to a new trial was an interlocutory ruling. It had the right, upon finding it had erred in issuing its decision, to set aside that interlocutory ruling.
*337 We note that the district court's January 29, 1999 ruling made no mention of plaintiffs' motion for JNOV. Where a trial court's ruling is silent with respect to any demand which was at issue under the pleadings, such silence constitutes an absolute rejection of such demand. Sun Finance Co., Inc. v. Jackson, 525 So.2d 532 (La.1988); Succession of Foster, 240 La. 269, 122 So.2d 96 (1960); Perot's Estate v. Perot, 177 La. 640, 148 So. 903 (1933); Soniat v. Whitmer, 141 La. 235, 74 So. 916 (1916). Thus, the district court initially denied plaintiffs' motion for JNOV. A district court's denial of a motion for JNOV, however, is an interlocutory order. See La. C.C.P. art. 1914(C). See also Brister v. Continental Ins. Co., 30,429 (La.App. 2 Cir. 4/8/98), 712 So.2d 177; Ehrman v. Holiday Inns, Inc., 94-0312 (La.App. 4 Cir. 6/30/94), 639 So.2d 1204; Suarez v. Modica, 609 So.2d 1013 (La.App. 5 Cir. 1992). As an interlocutory order, the district court was free to set aside its previous denial of plaintiff's motion for JNOV and, upon reaching the conclusion that it had erred in denying the motion, thereafter grant the motion.
In sum, then, the district court's January 29, 1999 ruling was an interlocutory order denying plaintiffs' motion for JNOV and giving defendants the option of submitting to an additur or a new trial. It was not a final, appealable judgment and defendants' timely motion rejecting the additur and accepting the new trial did not change the status of the court's ruling. The district court, upon finding it had erred in issuing the interlocutory order, had the right to set it aside prior to the issuance of a final judgment. Thus, the district court was acting within its authority when it signed the April 13, 2000 judgment granting JNOV in favor of plaintiffs.
Wal-Mart argues that plaintiffs' motion seeking reconsideration of their original motion for JNOV, filed February 18, 1999, was untimely and unauthorized by the Code of Civil Procedure and, as it was the vehicle and the authority for the trial court to reverse its January 29, 1999 ruling, could not have been considered by the court. We need not, however, determine whether the motion for reconsideration has a place in our trial practice or whether the motion, if it is a valid motion, was timely filed because this motion was not the source of the district court's authority for granting plaintiffs' motion for JNOV. As explained above, a trial court may correct an interlocutory ruling it later determines was erroneously issued on its own motion. Because the judge had that right, he had the right to accomplish the same end indirectly by acting on plaintiffs' request that he reconsider his ruling. See Labourdette at 548.[5]
*338 Wal-Mart's argument that the district court's judgment granting plaintiffs' motion for JNOV deprived it of its absolute right to reject the trial court's additur and accept a new trial is likewise without merit. Although the result of the trial court's April 13, 2000 judgment granting the JNOV may appear at first glance to take away Wal-Mart's rights under La. C.C.P. art. 1814 by forcing it to accept the additur with no real option to elect a new trial, there is no indication that the district court granted the JNOV as a means of forcing Wal-Mart to accept the additur. Rather, a careful review of the entire record in this case reveals that the trial judge honestly and sincerely believed he erred in granting an additur when, in his opinion, the more stringent standard for a JNOV had been met. In fact, the trial court's second "Opinion," signed March 30, 2000, notes that the original January 29, 1999 ruling "repeatedly stated ... that the jury's verdict was unquestionably low and that a fair and reasonable trier of fact in this matter would have found the awards as stated" in that earlier opinion. Thus, the trial court pointed out that it had always been of the opinion that the jury's verdict was abusively low and had erred when it originally denied JNOV and granted the additur or new trial. In any case, had the trial court signed the proposed order granting defendants a new trial, that order would also have been interlocutory and not appealable. Miller v. Chicago Ins. Co., 320 So.2d 134 (La.1975); Foster v. Kaplan Rice Mill, Inc., 203 La. 245, 13 So.2d 850 (1943). As we explained above, the trial judge would have been free to set aside any interlocutory ruling upon finding that he had erred in making it.
Having determined that the trial court was acting within its authority when it set aside its ruling giving defendants the option to choose between additur and a new trial and granted a JNOV in favor of plaintiffs, we must now consider whether the JNOV was proper on the merits of the case.
La. C.C.P. art. 1811 provides for and controls the use of JNOV. A JNOV may be granted on the issue of liability or on the issue of damages or on both issues. La. C.C.P. art. 1811(F). Although this article does not specify the grounds upon which the trial court may grant a JNOV, this court has set forth the criteria to be used in determining when a JNOV is proper:
[A] JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving *339 party. This rigorous standard is based upon the principle that when there is a jury, the jury is the trier of fact.
Joseph v. Broussard Rice Mill, Inc., 00-0628, pp. 4-5 (La.10/30/00), 772 So.2d 94, 99 (citations omitted). On appellate review of a JNOV, the court must first determine whether the trial judge erred in granting the JNOV by using the aforementioned criteria in the same way as the trial judge in deciding whether to grant the motion. Id. at p. 5, 772 So.2d at 99. That is, the court must determine whether the "facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict." Id. If reasonable persons might reach a different conclusion, then the trial judge erred in granting the motion and the jury verdict should be reinstated. Id.
The trial court granted a JNOV because it found the jury's award was abusively low and reasonable men could not differ as to the verdict. On appeal, the court of appeal affirmed this determination, finding the jury's determination of damages was unreasonable. In brief to this court, Wal-Mart argues that JNOV was improper because reasonable, fair-minded jurors could have arrived at differing damage awards and, furthermore, the evidence overwhelmingly supports the jury's evaluation of the evidence. After reviewing the record in this case, we find that reasonable minds could differ on the entitlement to and calculation of damages. We therefore conclude the trial court erred in granting the JNOV.
Because the trial court directed a verdict as to liability in this case, a decision which was not appealed, the only issue for the jury was the amount of damages, if any, to be awarded to plaintiffs. The JNOV granted by the trial court was therefore directed only to the issue of damages. On this issue, the record reveals that plaintiff was squatting in front of a magazine rack when she was struck in her lower back by a Wal-Mart shopping cart carrying trash bags filled with light trash such as empty candy boxes and register tapes and pushed by Glenn Goodeaux, a Wal-Mart employee. Glenn Goodeaux testified he was pushing the cart slowly when he struck Ms. VaSalle. He also testified that plaintiff appeared to be shaken after the accident, but when he asked her if she was okay, she said she was fine. Delores Bruns, a Wal-Mart employee who was working near the site of the accident when it occurred, testified that she did not witness the accident, but that she saw Ms. VaSalle immediately following the accident and she looked "kind of stunned."
Ms. VaSalle testified that the impact of the cart was "very severe" and the pain was of a kind she had never experienced before. She also testified she had a knot on her head following the accident. Plaintiff further testified that she thought she was okay after the accident, was embarrassed about it happening, and just wanted to get out of the store. When plaintiff returned to her truck where her husband was waiting for her, she felt light-headed, but refused her husband's offer to take her to the emergency room. The next day, however, she called the store to make an accident report and made an appointment to see a doctor. Plaintiff first saw Dr. Bernauer three weeks after the accident. She testified that at that time she had a slight concussion, a burning sensation coming from the knot on her head, and dizzy spells for four to six weeks. She returned to the doctor four weeks later and, by that time, had lower back pain. The doctor prescribed physical therapy which she attended for eight weeks. Plaintiff eventually *340 underwent tests such as a myelogram, CAT scans and an EEG. Plaintiff testified that although Dr. Bernauer recommended surgery, she refused, preferring to treat her injuries conservatively. At some point, plaintiff went to see Dr. Gorin, a pain management specialist, who prescribed medication and exercises for plaintiff. Plaintiff testified that the pain had "progressed heavily" during the last year prior to trial and she was now willing to undergo surgery.
Plaintiff also testified that she had been involved in two automobile accidents prior to the accident at Wal-Mart. Plaintiff was treated by Dr. Bernauer for about two years following one of the accidents, which occurred in 1987. Plaintiff testified that she did not injure her low back in either of the two accidents prior to the one at issue. On cross-examination, however, plaintiff was presented with a deposition she gave relating to a 1983 accident in which she stated she "had some trouble with my lower back." Additionally, Dr. Bernauer's report relating to plaintiff's treatment following the 1987 accident states that her diagnosis is "cervical, thoracic and lumbar strain." Plaintiff admitted that the lumbar strain referred to her low back and, when asked if she injured her low back a second time after the 1987 automobile accident, replied, "I guess so...." Plaintiff testified she could not explain why another report from Dr. Bernauer made about a year later stated that her diagnosis was "cervical and lumbar strain."
On further cross-examination, plaintiff, who was employed as a house cleaner prior to the accident, admitted that, up until four weeks prior to trial, she cleaned more houses after the accident than before the accident. Consequently, she earned more money after the accident than before the accident. Plaintiff also admitted that she did not tell the truth at her deposition regarding one job she had as a house cleaner at the time of the accident. Finally, plaintiff conceded she did yard work up until six weeks prior to trial, took care of her plants, washed her car, and went on vacation to Disney World.
Plaintiff's husband testified that, after the accident, plaintiff had a red spot on her back which eventually darkened into a bruise and a knot on her head. Mr. VaSalle testified that plaintiffs injuries seemed minor at first, but then got worse as time went on. In describing how plaintiffs injuries affected their relationship, Mr. VaSalle testified they were grouchier with each other, their sex life was not as active as it once was, Ms. VaSalle was hard to live with, and he and his daughter had to perform chores Ms. VaSalle used to do.
Plaintiffs also presented the testimony of Dr. Dale Bernauer, an orthopaedic surgeon, who treated plaintiff. Dr. Bernauer testified that the reference to "lumbar strain" in his reports of the earlier accidents was a typographical error. Dr. Bernauer stated that plaintiff's CT scan showed a right disk protrusion at L5-S1 abutting the S-1 nerve root and some mild diffused disk bulging from L2-3 to L4-5. Additionally, the film showed that the disk was protruding enough to press on the nerve and cause pressure on the nerve. Dr. Bernauer further testified that plaintiff's CAT scan also confirmed a problem at L5-S1. He also stated that tests revealed a worse disk protrusion at L4-5 than at L5-S1. Dr. Bernauer explained these findings would be consistent with plaintiff's complaints of pain in the legs and hips. Dr. Bernauer testified that plaintiff needs surgery to remove the disk at L4-5 and possibly the disk at L5-S1. The doctor testified it is more probable than not that plaintiff will need a fusion at both levels. He testified that the total cost of the surgery would be between $28,000 *341 and $35,000. Dr. Bernauer further testified that plaintiffs disability after the surgery would be 25% if she has a one-level fusion, or 50% if she has a two-level fusion. On cross-examination, Dr. Bernauer testified that plaintiffs first examination three weeks after the Wal-Mart accident was normal and he diagnosed muscle strain, but that her symptoms worsened with time. Dr. Bernauer admitted that it does not always take an accident to cause a bulging disk and that it was possible plaintiff had a bulging disk prior to the accident at Wal-Mart.
Plaintiffs also called Dr. Kevin Gorin, a physician accepted as an expert in the field of physical medicine, rehabilitation and pain medicine. Dr. Gorin testified that he first saw plaintiff about two years after the Wal-Mart accident and her major complaint was lower back pain radiating intermittently down her right leg. He prescribed anti-inflammatory medication and a membrane stabilizing medication for treatment of plaintiff's leg pain. He also recommended a supervised wellness and fitness program and injections into her back to facilitate a better level of activity and enhanced pain control. Over time, Dr. Gorin had to use stronger controlled substances and muscle relaxants to ease plaintiffs pain. Dr. Gorin testified that tests he performed showed some type of nerve root or peripheral nerve injury. Dr. Gorin further testified that he had done everything he could for her from a conservative and even a semi-aggressive standpoint, but plaintiff had not experienced any level of sustained relief. On cross-examination, Dr. Gorin admitted that there was minimal evidence of disk pathology as a generator of pain based on objective tests performed a year and nine months after the accident.
Dr. Thomas Ford, an orthopaedic surgeon who examined Ms. VaSalle at defendants' request in March 1997, testified that plaintiff had no objective evidence of nerve root injury or irritation when he examined her. Dr. Ford opined there was no motor deficit and no sensory deficit in the L4 or L5 nerve root distribution on his examination of Ms. VaSalle. Dr. Ford testified he saw no evidence of a right S-I joint dysfunction or right sciatica radiculopathy. Dr. Ford further testified that he reviewed the films of plaintiffs tests and saw no evidence of any significant pressure on her nerve roots from the lumbar spine. Dr. Ford concluded that plaintiff has no need for surgery.
Finally, plaintiffs called Dr. Charles Bettinger, a forensic economist and statistician who was recognized as an expert in the field of forensic economics. Dr. Bettinger testified that if plaintiff is totally disabled, her loss of earning capacity would be valued at $229,070. He further testified that if plaintiff is 50% disabled, then her loss of earning capacity would be approximately $114,500.
Subsequent to the presentation of this evidence, the parties stipulated that Ms. VaSalle had incurred medical expenses in the amount of $15,128.69. Defendants pointed out that they agreed that this amount of medical expenses was incurred by plaintiff, but disputed the causation and necessity for these medical expenses.
At the close of trial, the jury awarded plaintiffs a total of $70,000 in damages. This award included $15,00 in past medical expenses, $20,000 in future medical expenses, $25,000 in past, present, and future mental and physical pain and suffering, and $10,000 in future loss of earning capacity. The jury made no award for permanent disability or loss of consortium for Mr. VaSalle. After considering the record in its entirety, we find these awards were reasonable based on the evidence presented. It is apparent the jury believed Ms. VaSalle sustained some damages *342 as a result of the Wal-Mart accident. However, the jury's awards indicate it is possible the jury found Wal-Mart was not the sole cause of Ms. VaSalle's back problems and resultant medical bills. Such a conclusion is reasonable in light of the evidence presented at trial. After weighing the totality of the evidence, we conclude that reasonable, fair-minded jurors could have arrived at differing damage awards. Plaintiff did not seek immediate treatment for her injuries and had been involved in two previous accidents in which her back was injured. Plaintiff continued to work as a house cleaner after the accident and, in fact, admitted she worked even more following the accident than before it. Plaintiffs credibility was seriously challenged and called into question by defendants. The experts disagreed on the extent of plaintiffs injuries and her need for surgery. Dr. Bernauer did not find any objective evidence of plaintiffs complaints at her first visit and diagnosed only muscle strain. Thus, based upon the evidence presented at trial, we cannot say the jury's verdict was unreasonable. Therefore, the district court erred in granting a JNOV.
La. C.C.P. art. 1811 makes it clear that a motion for JNOV may be joined with a motion for new trial or a new trial may be moved for in the alternative. The article provides that if the motion for JNOV is granted, the court shall rule on the motion for new trial if one was made by determining whether it should be granted if the JNOV is thereafter reversed. La. C.C.P. art. 1811(C). A new trial shall be granted, upon contradictory motion, where: (1) the verdict or judgment appears clearly contrary to the law and evidence; (2) important evidence is discovered after trial; or (3) the jury was bribed or behaved improperly so that impartial justice was not done. La. C.C.P. art. 1972. Additionally, La. C.C.P. art. 1973 provides that a new trial may be granted "in any case if there is good ground therefor, except as otherwise provided by law."
In the instant case, plaintiffs moved for a new trial as an alternative to their motion for JNOV. The trial court's judgment granting a JNOV, however, did not address plaintiffs' alternative request for a new trial as required by art. 1811. Nevertheless, sending this particular matter back to the trial court for it to rule on the motion for new trial would be contrary to the concept of judicial economy and the interest of the parties in having this long-standing lawsuit concluded. Because we have previously concluded that the jury's verdict is reasonable in light of the evidence presented, we find that plaintiffs are not entitled to a new trial.

CONCLUSION
Although the trial court acted within its authority when it reconsidered its interlocutory ruling giving defendants the option to choose additur or new trial, it erred when it granted JNOV on the merits of this case. Consequently, the court of appeal erred in affirming the trial court's JNOV. After reviewing the record in the instant matter, we conclude the jury's verdict was reasonably supported by the evidence. Plaintiffs are therefore not entitled to a JNOV or a new trial. In light of these findings, we hereby reinstate the jury's verdict.
REVERSED. VERDICT REINSTATED.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.
[1] La. C.C.P. art. 1814 provides for remittitur or additur as an alternative to a new trial as follows:

If the trial court is of the opinion that the verdict is so excessive or inadequate that a new trial should be granted for that reason only, it may indicate to the party or his attorney within what time he may enter a remittitur or additur. This remittitur or additur is to be entered only with the consent of the plaintiff or the defendant as the case may be, as an alternative to a new trial, and is to be entered only if the issue of quantum is clearly and fairly separable from other issues in the case. If a remittitur or additur is entered, then the court shall reform the jury verdict or judgment in accordance therewith.
[2] Specifically, La. C.C.P. art. 1951 provides:

A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party:
(1) To alter the phraselogy [sic] of the judgment, but not the substance; or
(2) To correct errors of calculation.
[3] In the federal courts and in many state courts, additur is not allowed because it has been held to violate the Seventh Amendment right to trial by jury. See Dimick v. Schiedt, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935). The Seventh Amendment of the U.S. Constitution is one of the few rights contained within the Bill of Rights that has not been made applicable to the states. Rudolph v. Massachusetts Bay Ins. Co., 472 So.2d 901, 903 (La.1985). Because several jurisdictions only allow remittitur, many cases deal solely with the effect of a trial court's decision to offer a party the choice between remittitur or new trial. Louisiana treats additur and remittitur the same; therefore, the cited cases dealing with remittitur situations are analogous to the issue presented in this case. See Miller v. Chicago Ins. Co., 320 So.2d 134, 137 n. 5 (La.1975).
[4] The notices of appeal were filed after the district court entered the order granting plaintiffs the choice between remittitur and new trial. After these notices were filed, plaintiffs filed a notice in the district court purporting to accept the remittitur "under protest," but thereafter filed a notice attempting to withdraw their acceptance of remittitur. The district court did not act on these notices filed by plaintiffs. In the meantime, defendants filed in the court of appeals a motion to dismiss which was under consideration in the case discussed herein.
[5] In Labourdette, plaintiff's son was killed in the course and scope of his employment with defendant. Plaintiff filed a suit for damages pursuant to La. C.C. art. 2315 rather than the Employers' Liability Act then in force. Defendant filed an exception of no cause of action which was overruled by the trial court. The case was subsequently set for trial and, at the opening of trial, defendant objected to the reception of any evidence in the case, arguing that any claim plaintiff might have against it arose under the Employers' Liability Act. After hearing arguments on the objection, the trial court concluded that it had erred in not sustaining the exception of no cause of action, which was based on the same grounds as the objection then under consideration. The trial court therefore sustained the objection and dismissed plaintiff's suit. This court affirmed the trial court's judgment and began its analysis by considering whether the trial court had a right to entertain an objection based upon the same ground previously argued in the exception of no cause of action. In concluding that the trial court did have a right to entertain the objection, this court stated:

The decree overruling the exception was merely an interlocutory decree. The judge had the right, therefore, at the stage of the proceeding at which the objection was made, to set aside that decree, even of his own motion, and thereafter to sustain the exception, upon finding that he had erred in overruling it. As our brother had that right, we think that he had the right to accomplish the same end indirectly by sustaining an objection, based on the same ground as was the exception.
Labourdette at 548.