STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-412

KIMBERLY COLLINS, INDIV., ET AL.

VERSUS

LOUISIANA STATE POLICE, ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 20052426
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Jimmie C. Peters, and John E. Conery, Judges.

**AFFIRMED.**

Conery, J., dissents and assigns reasons.


James D. "Buddy" Caldwell
Attorney General
Adam L. Ortego, Jr.
Michael W. Landry
Asst. Attorneys General
One Lakeshore Drive, Suite 1200
Lake Charles, LA 70629
(337) 491-2880
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Louisiana State Police Dept. ofPublic & Safety
    Jarett Dobson

**Christopher C. McCall**
**Baggett, McCall, Burgess, Watson & Gaughan**
**P. O. Box 7820**
**Lake Charles, LA 70606-7820**
**(337) 478-8888**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Kimberly Collins**
    **Lauryn Gouthia**

**SAUNDERS, Judge.**

This is a personal injury case stemming from an automobile collision wherein a jury found for the plaintiff. Thereafter, the plaintiff filed a motion for a Judgment Notwithstanding the Verdict (JNOV). The trial court granted the plaintiff's motion and increased certain categories of damages. Defendants appeal. We affirm.

## FACTS AND PROCEDURAL HISTORY:

On May 4, 2004, plaintiff, Kimberly Collins (Ms. Collins), was injured in an automobile accident when a vehicle being driven by defendant, Trooper Jarrett Dobson (Trooper Dobson), struck the vehicle she was driving at an intersection in Lake Charles. Trooper Dobson was within the course and scope of his employment with the defendant, Louisiana State Police (LSP). The intersection was controlled by a stop sign, and Ms. Collins was travelling on the favored road. Trooper Dobson failed to stop at the stop sign and collided with Ms. Collins.

On May 5, 2005, Ms. Collins filed suit against Trooper Dobson and the LSP (collectively "Defendants") individually, and on behalf of her of minor daughter. Liability was then decided at a Motion for Partial Summary Judgment granted in favor of plaintiffs,[1] holding Defendants 100% at fault.

According to the testimony of Trooper Dobson, there was only minor damage to the vehicles, no injuries were reported at the scene, and Ms. Collins drove away in her vehicle after the investigation was complete. However, Ms. Collins visited the emergency room later that same day seeking medical treatment for pain in her back, neck, and shoulder.

---

[1] Although Ms. Collins filed suit on behalf of her minor daughter, who was a passenger at the time of the accident at issue, the record does not reflect that any of the minor daughter's claims were presented to the jury at trial.

On May 21, 2004, Ms. Collins saw Dr. Percival Kane, her family physician. Dr. Kane diagnosed Ms. Collins with neck, shoulder, and back pain. He observed no spasms. He continued to treat her conservatively with medication and referred her to physical therapist, Timothy Naquin, who treated her cervical and lumbar strain and her shoulder injury. After three weeks, Naquin reported her progress was fair to good.

About one month following the accident, Ms. Collins became pregnant. A cervical MRI which had been ordered by Dr. Kane was delayed until September 2, 2004. The MRI was negative for the cervical spine, with no noted disc herniation or spinal stenosis. When Ms. Collins did not improve, Dr. Kane referred her to an orthopedist, Dr. Lynn Foret, in October of 2004.

Dr. Foret began treating Ms. Collins conservatively and referred her to physical therapy with Freddie Regan Chandler. Dr. Foret diagnosed an annular tear of her lumbar disc at L4-5. He noted symptoms of spasms in the back and radicular leg pain consistent with an injury to the lumbar disc. After several months of therapy, Ms. Chandler noted that Ms. Collins was pain free following her therapy treatment on June 7, 2005. However, the next day, Ms. Collins saw Dr. Foret and reported that her back pain returned shortly after her therapy treatment. Dr. Foret also testified that on June 8, 2005, he estimated Ms. Collins could return to work in about one month, on or about July 1, 2005. He told the jury, however, that if she had to work as a manager or assistant manager at a shoe store, "that would be pretty strenuous for someone with back problems." Nevertheless, he released her to light and sedentary work if she chose to give it a try.

Ms. Collins began to suffer additional pain. She reported increased back pain after cleaning out her car on July 12, 2005, and also noted that her pain

increased when she lifted and carried her baby, who was born on March 18, 2005. "If she lifts, she hurts," according to Dr. Foret's testimony. She continued treatment with Dr. Foret, who continued conservative care. Dr. Foret's July 12, 2005 office note states in part, "Annular tear is causing the lower back pain." On the July 12, 2005 visit, after noting Ms. Collins' back pain was worse, Dr. Foret again referred Ms. Collins to physical therapy with Ms. Chandler. She continued conservative care for quite some time, during which Dr. Foret noted an up and down cycle, improvement with therapy followed by increased pain with activity.

When she failed to achieve lasting improvement, Dr. Foret referred Ms. Collins to Dr. Frank Lopez, a specialist in pain management, who first saw Ms. Collins on October 10, 2007. Dr. Lopez found that Ms. Collins had decreased sensations in the right hand and leg and weakness in the back musculature. Her pain level was reported as seven out of ten, and she suffered from depression. Dr. Lopez's treatment plan was to try to manage her pain with medication..

As her symptoms continued to worsen, Ms. Collins again saw Dr. Foret, who last saw Ms. Collins on March 5, 2008, and referred her to a neurosurgeon, Dr. Gregory Rubino. While Dr. Foret did state in his notes of April of 2007, that he felt Ms. Collins could get by without surgery, he testified at trial that Ms. Collins still continued with back complaints secondary to an annular tear at L4-5. Since he no longer did back surgery, he referred her to a neurosurgeon. He stated, ". . . If she elects for surgery, that's fine[.] [S]he had this back pain for a long time and leg pain and back spasms, and so most people can go just a certain amount of time before they start searching out another treatment plan, which is surgery."

Dr. James Domingue, a neurologist, performed an independent medical examination on Ms. Collins in 2008. He indicated that he would have taken a

more conservative approach. He did not recommend surgery for Ms. Collins at that time.

Dr. Rubino evaluated Ms. Collins in September of 2010, and after performing a discogram confirming a problem with the lumbar disc at L4-5, he ultimately performed lumbar disc decompression and a one level fusion on November 23, 2010. Ms. Collins claims the surgery did not fully relieve her pain, and she continued treatment with Dr. Rubino and Dr. Lopez. Dr. Lopez continues as her treating physician for pain management, especially for symptoms related to her back. However, she continues to suffer neck and shoulder pain as well. In addition, future cervical surgery remains a possibility.

Ms. Collins did not seek employment of any kind between July of 2005, and the surgical procedure by Dr. Rubino in 2010. Although, Ms. Collins may not have been able to engage in any occupation that required heavy lifting, bending, climbing, repetitive stooping, or standing for long periods, according to her physicians, she might have been able to perform some sedentary or light duty jobs.

A review of her employment history outlined during the testimony of Jeffery Peterson, Defendants' vocational rehabilitation expert, reflected that in the approximately ten years prior to the accident, from May 1994, when she graduated from high school, to May 2004, the time of the accident, Ms. Collins held a number of jobs which were more of a sedentary nature with different semi-skilled activities. Her various jobs included employment in two different shoe stores as both assistant manager and manager. She worked as a telephone operator, a store clerk, a cage cashier at the Isle of Capri Casino, a bank teller, a valet attendant, a security guard, and an admitting clerk at a hospital. She also worked at Lowe's and at a mortgage company doing office administrative work.

4

At trial, Ms. Collins presented the testimony of all of her healthcare providers, Dr. Kane, Dr. Foret, Ms. Chandler, Dr. Rubino, and Dr. Lopez. Each one testified that Ms. Collins suffered back, neck, and a shoulder injury as a result of the accident, assuming her history of trauma from the auto collision was correct. Ms. Collins family physician, Dr. Kane, testified that Ms. Collins had not reported any history of back problems prior to this accident.

The State offered the testimony of Dr. Domingue, who performed an independent medical evaluation and found no neurological injury. Dr. Domingue did testify, however, that he would defer to Ms. Collins' treating orthopedist and surgeon as to any orthopedic or neurosurgical injuries that were outside of his area of expertise.

The parties each presented vocational rehabilitation experts and economists. The State's economist, Dr. Michael Kurth, calculated future lost wages based on the assumption that Ms. Collins could not work as she claimed. He assumed an annual earning capacity of approximately $20,500.00, which was based on the amount she earned in 2003, the highest in her life. Based on those assumptions, he calculated that Ms. Collins had a loss of future earning capacity of $709,597.00. Ms. Collins' expert economist, Dr. Charles Bettinger, based his opinion on an annual earning capacity of $40,000.00. He used the annual salary of a store manager, Ms. Collins' last job before she was fired. He calculated $1,200,000.00 as her loss of future earning capacity.

After considering all the evidence, the jury rendered a damages verdict as follows:

| | | |
|---|---|---|
| Past physical pain and suffering | $ | 60,000.00 |
| Future physical pain and suffering | $ | 10,000.00 |
| Past mental pain and suffering | $ | 60,000.00 |
| Future mental pain and suffering | $ | 0.00 |
| Past medical expenses | $ | 352,298.71 |

5

| | | |
|---|---|---|
| Future medical expenses | $ | 2,900,000.00[2] |
| Past loss of wages | $ | 46,575.00 |
| Future loss of wages | $ | 35,000.00 |
| Loss of enjoyment of life | $ | 0.00 |
| Disability | $ | 0.00 |
| Total amount | $ | 3,463,873.71 |

The trial court signed a formal judgment for this amount on August 20, 2010. Ms. Collins' attorney timely filed a Motion for JNOV. After considering Ms. Collins' motion, the trial court issued written reasons for granting the JNOV and raising some of the awards to the following amounts:

| | | |
|---|---|---|
| Future physical pain and suffering | $ | 100,000.00 |
| Future mental pain and suffering | $ | 50,000.00 |
| Loss of enjoyment of life | $ | 50,000.00 |
| Disability | $ | 75,000.00 |
| Future loss of wages | $ | 750,000.00 |

Awards not listed above remain the same as awarded by the jury. A formal final judgment incorporating the awards made in the JNOV was rendered on December 18, 2012, and Defendants timely appealed.

## ASSIGNMENTS OF ERROR:

1. The Trial Court erred in granting the Plaintiff's Motion for Judgment Notwithstanding the Verdict.

2. The Trial Court erred in excluding significant probative evidence offered by the Defendants relating to force of impact, photographs of the vehicles, and MySpace posts.

## ASSIGNMENT OF ERROR NUMBER ONE:

In their first assignment of error, Defendants argue that the trial court erred in granting Collins' motion for JNOV. We disagree.

---

[2] Louisiana Revised Statutes 13:5106(B)(3)(c) requires that any medical care and related benefits incurred subsequent to judgment are to be paid from the Future Medical Care Fund as provided in La.R.S. 39:1533.2. Any amount for these services is to be paid directly to the provider of the medical care and benefits as they are incurred. The jury was instructed not to discount the award for future medical and the experts, likewise, did not do so. The jury heard testimony from Dr. Kurth, the economist, that future medical bills would be submitted by the medical provider directly to the State when incurred. The trial court also briefly instructed the jury about the payment of future medical expenses prior to delivering the jury charge.

In *Joseph v. Broussard Rice Mill, Inc.*, 00-0628, pp. 4-5 (La. 10/30/00), 772 So.2d 94, 99 (quoting *Scott v. Hospital Serv. Dist. No. 1 of St. Charles Parish*, 496 So.2d 270, 273 (La.1986)) (additional citations omitted), the supreme court set forth the criteria for trial courts to use in determining when a JNOV is proper:

> JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. This rigorous standard is based upon the principle that "[w]hen there is a jury, the jury is the trier of fact."

The Louisiana Supreme Court in *Trunk v. Medical Center of Louisiana at New Orleans*, 04-181, pp. 4-5 (La. 10/19/04), 885 So.2d 534, 537, set forth the standard of review for an appellate court when reviewing a JNOV granted by a trial court:

> In reviewing a JNOV, an appellate court must first determine whether the district judge erred in granting the JNOV by using the above-mentioned criteria in the same way as the district judge in deciding whether to grant the motion. *VaSalle* [*v. Wal-Mart Stores, Inc.*,] 01-0462, at pp. 11-12 [(La. 11/28/01)], 801 So.2d [331,] 339. Thus, the appellate court must determine whether the "facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict." *Id.* at p. 12, 801 So.2d at 339 (quoting *Joseph* [*v. Broussard Rice Mill, Inc.*,] 00-0628 at p. 5, 772 So.2d [94,] 99). If the appellate court determines that reasonable persons might reach a different conclusion, then the district judge erred in granting the motion and the jury verdict should be reinstated. *Id.*

Quite recently, this court, in *Guillory v. Progressive Insurance Co.*, 12-1284, pp. 10-11 (La.App. 3 Cir. 7/3/13), 117 So.3d 318, 326 (alteration in original), stated the following:

A motion for JNOV should be denied if there is evidence opposed to the motion of such quality and weight that reasonable persons in the exercise of impartial judgment might reach different conclusions. *Scott*[*v. Hosp. Serv. Dist. No. 1 of St. Charles Parish*, 496 So.2d 270 (La.1986) []. In making this determination, all reasonable inferences or factual questions should be resolved in favor of the non-moving party. *Anderson v. New Orleans Pub. Serv., Inc.*, 583 So.2d 829 (La.1991). The rigorous standard for granting a motion for JNOV is based on the principle that "[w]hen there is a jury, the jury is the trier of fact." *Scott*, 496 So.2d at 273. A motion for JNOV should be granted only when the evidence points so strongly in favor of the moving party such that reasonable men could not reach different conclusions. *Hyatt v. Raggio*, 99-887 (La.App. 3 Cir. 2/2/00), 757 So.2d 773, *writ denied*, 00-1431 (La.6/23/00), 765 So.2d 1050.

In this case, the trial court granted Ms. Collins' JNOV and increased various awards for general damages and future loss of wages.

| Damage Item: | Jury: | JNOV: |
| --- | --- | --- |
| Future physical pain and suffering | $10,000.00 | $100,000.00 |
| Future mental pain and suffering | $    0.00 | $ 50,000.00 |
| Loss of enjoyment of life | $    0.00 | $ 50,000.00 |
| Disability | $    0.00 | $ 75,000.00 |
| Future loss of wages | $35,000.00 | $750,000.00 |

The trial court ruled that the amounts awarded by the jury for these categories of general damages was abusively low and inconsistent with the awards of damages for the full amount of Ms. Collins' past and future medical expenses and past lost wages. In granting her JNOV, the trial court concluded that because the jury awarded some amount for future pain and suffering and for future lost wages, "the jury clearly concluded that [Ms.] Collins would suffer in the future. In other words, she is not pain free and cannot return to work at the same level as before the accident. The verdict is inconsistent and this is a legal error."

Defendants argue that this case is one in which the award of special damages is not inconsistent with the failure to award certain sums in general damages, citing *Wainwright v. Fontenot*, 00-492 (La. 10/17/00), 774 So.2d 70. In *Wainwright*, the supreme court held that the jury's failure to award general damages was not inconsistent with its award for medical expenses for overnight observation in an

action which alleged a pharmacy mis-filled a prescription for anti-depressant medication for a child. In that case, the evidence supported the jury's finding that the child's brief overdose and subsequent hospitalization for observation, which was a reasonable precaution for the parents to take under the circumstances, resulted in no compensable pain and suffering, and that the child's behavior following the overdose was no worse than it had been prior to the overdose.

This case is distinguishable from *Wainwright*. Here, we have a jury that clearly found that Ms. Collins endured compensable pain and suffering as evidenced by its awards of past physical pain and suffering. Moreover, the jury clearly found that Ms. Collins would suffer in the future, as they awarded her damages for future physical pain and suffering and full compensation for her future medical bills. Accordingly, Defendants' reliance on *Wainright* is misplaced.

We do note that there are other cases in Louisiana jurisprudence that have had similar seemingly inconsistent verdicts, and, in those cases, courts have found the verdicts to be reasonable. However, we also find those cases to be distinguishable to the case at bar.

In *VaSalle v. Wall-Mart Stores*, 01-462 (La. 11/28/01), 801 So.2d 331, several doctors offered conflicting testimony about the severity of the plaintiff's injuries and the causal relationship of her later physical condition to the injury that was the subject of the lawsuit. The jury did assign some damages, but their limited award indicated they chose an amount that would reflect only the damages clearly caused by the relevant injury.

This case differs from the situation in *VaSalle*. In *VaSalle*, the jury's judgment was consistent in its awards, and the supreme court found that the trial court's grant of a JNOV was unwarranted due to an existing reasonable view of the evidence to support those consistent awards given by the *VaSalle* jury. Here, we

9

have a jury that awarded all damages sought by Ms. Collins for past physical pain and suffering, past lost wages, past medical bills, and future medical bills. Thereafter, this jury awarded only partial amounts for future pain and suffering and future lost wages while awarding nothing for disability and loss of enjoyment of life. Unlike the awards given by the jury in *VaSalle*, here, there is no reasonable view of the evidence to support this jury's inconsistent result.

Likewise is the case of *Davis v. State, Department of Transportation and Development*, 11-625, p. 9 (La.App. 3 Cir. 11/2/11), 78 So.3d 190, 196, *writ denied*, 11-2681 (La. 2/10/12), 80 So.3d 488. In *Davis*, the plaintiff was injured when his vehicle left the roadway near a curve in the highway. The jury concluded that the plaintiff had not established that there was a defect in the Louisiana highway. The trial court granted the plaintiff's motion for a JNOV, setting aside the jury's verdict and assigning 50% of the fault to each Mr. Davis and DOTD. In granting the JNOV, the trial court found, in pertinent part, "Had the 'curve' sign and speed sign been posted the plaintiff *may* have averted this accident and the presence of the signs would have put him on notice to reduce his speed." *Id*. at 195.

A panel of this court reversed the JNOV granted by the trial court. This court found, after reviewing the evidence of both experts and the testimony of the investigating officer, that the jury could have reasonably concluded that the plaintiff's speed in excess of seventy-five miles per hour and his failure to maintain control of the vehicle were the cause of the accident. Thus, the jury could have also reasonably concluded that the presence or absence of signs played no part in causing the accident which resulted in plaintiff's injuries.

Again, as was the situation above in *VaSalle*, the result reached by the *Davis* jury, in its entirety, was supported by a view of the evidence in the record. Here, as stated above, that is not the case.

The record before us arguably does support certain individual elements of the jury's judgment when viewed in a vacuum, i.e., with no regard of the rest of the elements present in the jury's judgment. However, as the trial court correctly pointed out, there is no view of the evidence that supports the jury's judgment awarding Ms. Collins as inconsistently as it did. Therefore, we find that no reasonable person could award Ms. Collin fully for past and future medical bills, fully for past lost wages, but only partially for future lost wages. Likewise, no reasonable person could view the evidence and render a judgment awarding Ms. Collins fully for past and future medical bills, fully for past physical and mental pain and suffering, but only partially for future pain and suffering and not at all for future mental pain and suffering, disability, and loss of enjoyment of life.

Accordingly, we find no merit to this assignment of error. The trial court granted Ms. Collins' motion for JNOV, and, given our finding that no reasonable person could have reached the unreasonably inconsistent judgment reached by the jury, we affirm the trial court's grant of Ms. Collins' motion for JNOV.

**ASSIGNMENT OF ERROR NUMBER TWO:**

Defendants, in their second and final assignment of error, contend that the trial court erred in excluding significant probative evidence offered by them relating to force of impact, photographs of the vehicles, and MySpace posts. We find that this contention is without merit.

Defendants filed a supervisory writ on this same issue on May 8, 2012. This court denied the writ, stating "we find no error in the trial court's ruling."

The doctrine of law of the case is a discretionary doctrine. [*Clement v. Reeves*, 07-1154, 07-1155 (La.App. 3 Cir. 1/30/08), 975 So.2d 170, *writ denied*, 08-0482 (La.4/18/08), 978 So.2d 355]. In *Clement*, 975 So.2d at 174, we quoted our colleagues on the second circuit:

> Typically, following the "law of the case" doctrine, reargument of a previously decided point will be barred where there is simply a doubt as to the correctness of the earlier ruling. However, the law of the case principle is not applied in cases of palpable error or where, if the law of the case were applied, manifest injustice would occur.

*Guillory*, at 117 So.3d at 322 (quoting *Clement v. Reeves*, 07-1154, 07-1155, p. 4 (La.App. 3 Cir. 1/30/08), 975 So.2d 170, 174 (quoting *Rogers v. Horseshoe Entm't*, 32,800, pp. 5-6 (La.App. 2 Cir. 8/1/00), 766 So.2d 595, 600-01)).

Here, Defendants have raised no meritorious argument that there was palpable error nor that manifest injustice would occur if we refuse to hear their argument. Rather, Defendants simply reargue that the trial court's ruling was incorrect. Thus, we choose to apply the law of the case doctrine and will not reconsider their argument.

Moreover, we note that Trooper Dobson testified to the low impact nature of this accident. Thus, the evidence relating to the low impact nature of the accident and the photographs of the vehicles after the accident are cumulative, and their exclusion was harmless to Defendants.

Regarding the MySpace photographs and comments and their inconsistencies with what Ms. Collins told her physicians or presented in her testimony, Defendants point to no particular photograph or comment for this court to observe. Further, Ms. Collins was questioned regarding statements she made on MySpace on cross-examination for the jury to hear. As such, admitting the MySpace evidence, like the photographs of the accident, would be cumulative and their exclusion is harmless to Defendants. As an aside, this writing judge is of the view that a person's online life depicted in social media is commonly not intended

12

to reflect reality as much as it is intended to engender discourse.  Therefore, courts should give serious consideration as to what probative value, <u>if any</u>, should to be given to such "evidence."

## CONCLUSION:

Trooper Dobson and the Louisiana State Police raise two assignments of error.  They argue that the trial court erroneously granted Ms. Kimberly Collins' motion for Judgment Nothwithstanding the Verdict and that the trial court erroneously excluded photographs of the vehicles following the accident and photographs and comments made by Ms. Collins on her MySpace page.

We find no error by the trial court in granting Ms. Collins' motion for JNOV.  The trial court's judgment is affirmed, and we assess all costs of these proceedings to Trooper Dobson and the Louisiana State Police.

**AFFIRMED.**

NUMBER 13-412

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

KIMBERLY COLLINS, INDIV., ETC., ET AL

VERSUS

LOUISIANA STATE POLICE DEPT. OF PUBLIC SAFETY

CONERY, J., dissents and assigns written reasons.

I would reverse the trial court's grant of a motion for judgment notwithstanding the verdict (JNOV) in favor of Kimberly Collins and would reinstate the original jury verdict rendered in this case and the original judgment signed August 20, 2012 and filed in to the record on August 21, 2012.

Under the standard set forth by the supreme court in reviewing a JNOV in *Joseph v. Broussard Rice Mill, Inc.*, 00-0628, p. 5 (La. 10/30/00), 772 So.2d 94, 99 (quoting *Scott v. Hospital Serv. Dist. No. 1,* 496 So.2d 270, 273 (La.1986)) (additional citations omitted), and more recently in *Trunk v. Medical Center of Louisiana at New Orleans*, 04-181, pp. 4-5 (La. 10/19/04), 885 So.2d 534, 537 both cited by the majority, *Joseph* stated:

> The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. This rigorous standard is based upon the principle that "[w]hen there is a jury, the jury is the trier of fact."

After reviewing the record in this case in light of the standard required in *Joseph* and *Trunk*, I find "that reasonable persons might reach a different conclusion." *Trunk*, 885 So.2d at 537.

The jury consistently awarded as general and economic damages relatively low or no damages for eight of the ten items on the jury verdict form. The jury's low or no awards for all of the items dealing with future physical and mental pain and suffering, future loss of wages, loss of enjoyment of life, and disability could reasonably be based on the totality of the evidence, especially the credibility, or lack thereof, of Ms. Collins.

Ms. Collins credibility was particularly relevant to the jury's decision to award $35,000 for future lost wages, which the trial court increased to $750,000. At trial, defendant's expert vocational rehabilitation specialist, Jeffrey Peterson, recounted numerous instances in Ms. Collins' deposition and trial testimony, wherein she gave one reason for leaving a job, yet the employment records he reviewed demonstrated a completely different reason

The jury's low award for future lost wages can also be reconciled with and is supported by the evidence of Ms. Collins sporadic employment history. According to Mr. Peterson, Ms. Collins work history painted a picture of an unreliable employee who had trouble maintaining employment for a variety of reasons, such as abandoning her job, disputes with supervisors, and inventory discrepancies at work. In approximately ten years, Ms. Collins was employed by some eighteen different businesses and did not work a full year at any time during the entire ten year period. At the time of the accident, she had been unemployed for six to seven months.

Mr. Peterson reviewed in detail for the jury Ms. Collins work history beginning with her graduation from high school in May of 1994. The year 2003 was the only year in the period from 1998 to 2003 that Ms. Collins worked even ten months. Her average for the remaining years of her entire work life was 6.2 months, with an average income of only $5,000 per year. In addition, after her employment as a manager resulted in her termination in October 2003, she did not

attempt to return to a managerial position, or any position for that matter, for the six months prior to her accident in May 2004. In considering the evidence of Ms. Collins employment history, it is readily evident that the jury could have discounted the testimony of plaintiff's experts, Mr. Lipinski and Dr. Bettinger and instead relied on the testimony of Mr. Peterson in rejecting Ms. Collins' request for 1.2 million dollars in future lost wages.

A jury's determination of an award of damages, if any, for lost future wages is a finding of fact. Louisiana Civil Code Article 2324.1 provides, "In the assessment of damages in the cases of offenses, quasi-offenses and quasi contracts, much discretion must be left to the judge or jury." The jury award of $35,000 for "Future Loss of Wages" is arguably very low. Ms. Collins was only thirty-five years old at the time of the trial, and, according to her treating physicians, Dr. Rubino and Dr. Lopez, she was and will continued to be disabled. However, the verdict can be supported by the jury's evaluation of Ms. Collins credibility, her sporadic work history, the jury's evaluation of the credibility of the testimony of the experts and the basis for their assumptions, as well as all the evidence contained in the record. I find that the award of $35,000, a finding of fact according to the law, was within the jury's discretion and was not manifestly wrong.

The jury failed to make any award to Ms. Collins for future mental and physical pain and suffering, loss of enjoyment of life and disability. The trial court in its JNOV awarded $100,000 for future physical pain and suffering, $50,000 for future mental pain and suffering, $50,000 for loss of enjoyment of life and $75,000 for disability. Had the trial court been the fact finder, the awards are reasonable. But the jury was the fact finder, and though we may disagree, the jury's lack of an award for these damages is consistent with the jury's evaluation of the evidence presented and their evaluation of Ms. Collins and her credibility as a witness.

Once again, as the supreme court in *Joseph* instructed, in reviewing a trial court's grant of a JNOV:

> In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. This rigorous standard is based upon the principle that "[w]hen there is a jury, the jury is the trier of fact." *Joseph*, 772 So.2d at 99.

Though this court understands that the able trial court and the majority of this court feel the jury award for certain elements of damages is very low and perhaps somewhat unjust, the standard of review set forth by our supreme court prevents the trial court and this court from substituting our judgment for that of the jury. Reasonable persons could and did differ as to the elements of damages in this case, a fact question. Using *Joseph* as a guide, I would reverse the trial court and reinstate the jury verdict rendered.