# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**05-339**

**CHARLES DUCHAMP, ET UX.**

**VERSUS**

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2001-6076
HONORABLE J. DAVID PAINTER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Marc T. Amy, Judges.

**AFFIRMED.**

**James A. Blanco**
**Mitchell & Blanco, LLC**
**One Lakeshore Drive, Suite 1135**
**Lake Charles, LA 70629**
**(337) 436-8686**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **State Farm Mutual Automobile Insurance Company**
    **Ernest Loftin**

**Christopher C. McCall**
**Baggett, McCall, Burgess, Watson & Gaughan**
**Post Office Drawer 7820**
**Lake Charles, LA 70606-7820**
**(337) 478-8888**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Charles Duchamp**
    **Margaret Duchamp**

AMY, Judge.

The plaintiff brought suit for injuries he alleges he sustained in an automobile accident with the defendant in 2000. A jury awarded him damages, including an award of $85,000.00 for future medical expenses, but no award for future pain and suffering. The district court granted a judgment notwithstanding the verdict, awarding the plaintiff $100,000.00 for future pain and suffering in addition to the damages awarded by the jury. For the following reasons, we affirm.

**Factual and Procedural Background**

Shortly after midnight on Friday, December 3, 2000, Charles Duchamp was in Westlake, Louisiana, driving to the Isle of Capri Casino, where he worked as a Dual Rate Supervisor. He testified that while he was stopped for a traffic light, a pick-up truck driven by Ernest Loftin rear-ended the car he was driving. Westlake police officer Jeffrey Sigmund was called to the scene, but did not issue any traffic citations. Officer Sigmund stated that Mr. Loftin told him that he had been blinded by the headlights of a vehicle traveling in the opposite direction just before the impact. Although Mr. Duchamp testified that he had begun to feel soreness in his neck immediately after the accident, he took Tylenol and went to work.

After his shift finished later that morning, he testified that he picked up the accident report from the police station, visited the office of his automobile insurer, and went home to sleep. The plaintiff stated that he awoke that evening feeling "stiff as a board" and that his soreness continued throughout the weekend. After he finished work on Monday morning, the plaintiff visited his regular internist with complaints of neck and back pain, and headaches. The plaintiff alleges that his condition continued to deteriorate following the accident, resulting in pain radiating down his arms and legs, facial drooping and numbness, and loss of libido. He

underwent numerous treatments in the years following the accident including physical therapy, chiropractic care, and epidural injections.

He brought suit on December 3, 2001 against Ernest Loftin[1] and his insurers, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company, for the damages he sustained in the accident. His wife also filed a loss of consortium claim. At the jury trial on the matter, the defendants challenged whether all of the treatments were necessary and whether injuries alleged by the plaintiff were attributable to another rear-end accident in which the plaintiff was involved in October 2003. The jury awarded damages as follows:

| | |
|---|---|
| Past Physical and Mental Pain and Suffering | $20,000.00 |
| Future Physical and Mental Pain and Suffering | $      0.00 |
| Past Medical Expenses | $25,000.00 |
| Future Medical Expenses | $85,000.00 |
| Loss of Enjoyment of Life | $15,000.00 |
| Loss of consortium for Margaret Duchamp | $ 7,500.00 |
| | |
| TOTAL AMOUNT | $152,500.00 |

The plaintiff subsequently requested a judgment notwithstanding the verdict from the trial court, alleging that the jury's failure to award damages for future pain and suffering constituted legal error. The trial court granted the JNOV and awarded the plaintiff $100,000.00 for future pain and suffering in addition to the damages awarded by the jury.

The defendants appeal, asserting that the trial court erred in "granting JNOV and overturning a reasonable jury determination to reject a claim of future pain and suffering[,]" and that the jury erred in "finding that the plaintiff would not suffer future pain and suffering but providing an award for future medical expenses."

---

[1] The plaintiff requested that the Succession of Ernest Loftin be added as a defendant in the Plaintiff's Second Supplemental and Amending Petition, which was filed on July 22, 2004.

**Discussion**

*Judgment Notwithstanding the Verdict*

For their first assignment, the defendants suggest that the trial court erred in granting the JNOV, alleging that the jury could have found that some of the plaintiff's injuries are actually attributable to a subsequent automobile accident.

The Louisiana Supreme Court discussed the standard for reviewing a trial court's grant of a judgment notwithstanding a jury's verdict in *Trunk v. Med. Center of La. at New Orleans*, 04-181 (La. 10/19/04), 885 So.2d 534.

> The use of JNOV is provided for by La. C.C.P. art. 1811. A JNOV may be granted on the issue of liability or on the issue of damages or on both issues. La. C.C.P. art. 1811(F). Article 1811 does not specify the grounds upon which the district court may grant a JNOV; however this court has set forth the criteria to be used in determining when a JNOV is proper as follows:
>
> > [A] JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
>
> *Joseph v. Broussard Rice Mill, Inc.*, 00-0628, pp. 4-5 (La.10/30/00), 772 So.2d 94, 99 (internal citations omitted). *See also VaSalle v. Wal-Mart Stores, Inc.*, 01-0462, p. 11 (La.11/28/01), 801 So.2d 331, 338-39. The rigorous standard of JNOV is based upon the principle that "when there is a jury, the jury is the trier of fact." *Joseph,* 00-0628 at p. 5, 772 So.2d at 99 (quoting *Scott v. Hospital Serv. Dist. No. 1*, 496 So.2d 270, 273 (La.1986)).
>
> In reviewing a JNOV, an appellate court must first determine whether the district judge erred in granting the JNOV by using the

above-mentioned criteria in the same way as the district judge in deciding whether to grant the motion. *VaSalle*, 01-0462 at pp. 11-12, 801 So.2d at 339. Thus, the appellate court must determine whether the "facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict." *Id.* at p. 12, 801 So.2d at 339 (quoting *Joseph*, 00-0628 at p. 5, 772 So.2d at 99). If the appellate court determines that reasonable persons might reach a different conclusion, then the district judge erred in granting the motion and the jury verdict should be reinstated. *Id.*

*Id.* at 537.

The plaintiff alleged in his JNOV motion that the jury had committed legal error in awarding past and future medical expenses and damages for past pain and suffering, but not awarding damages for future pain and suffering. Consequently, the plaintiff requested that the district judge perform a *de novo* review and render a higher damage award, which would include future pain and suffering. At the JNOV hearing, the district judge, who had presided over the trial, stated that although he felt that the jury "came up with the right number[]" regarding the medical expenses, he felt that the jury's award for future medical damages but not for future pain and suffering was "inconsistent with the evidence that was presented to them." He also said that he "think[s] it goes without saying if [the plaintiff is] going to have problems and going to incur that much medical that he's going to have some pain and suffering." Therefore, he granted $100,000.00 for future pain and suffering in addition to the jury's other damage awards.

The Louisiana Supreme Court considered the soundness of a verdict in which a jury awarded special damages for medical expenses but did not award general damages for pain and suffering in *Wainwright v. Fontenot*, 00-492 (La. 10/17/00), 774 So.2d 70. The supreme court noted that certain appellate court decisions had found such verdicts clearly erroneous, but found that the *Wainwright* jury's verdict

was not inconsistent based on the facts of the case.[2] The supreme court considered the issue again in *Green v. K-Mart Corp.*, 03-2495 (La. 5/25/04), 874 So.2d 838, stating that "in those cases in which reviewing courts have examined 'inconsistent' jury awards where special damages for medical expenses, but not general damages, were awarded, the courts have determined that no abuse of jury discretion occurred where the medical expenses were incurred only to determine whether injuries were, in fact, sustained." *Id.* at 844.

Applying this analysis to the present case, the record clearly supports the determination that the plaintiff suffered some injuries from the accident, and that he has incurred damages beyond mere testing.[3] The issue surrounding the JNOV is whether the defendant would continue to suffer from these injuries and incur damages after the date of trial. Our review indicates that the plaintiff had begun experiencing pain and other symptoms immediately following the accident, which he continued to experience at the time of trial. Although the defendant's appeal relates to damages for future pain and suffering, it is relevant to consider the nature and degree of the

---

[2] In *Wainwright*, a child had taken an antidepressant medication that had been erroneously filled by the defendant pharmacy at a higher dosage than prescribed. Upon learning of the error, the child's parents took him to a hospital, where he was admitted for observation and testing and released the next day. The *Wainwright* jury awarded the plaintiffs $1,500.00 for medical expenses for the hospital stay, but did not award any general damages. The Louisiana Supreme Court held that it was a reasonable precaution for prudent parents to take their child for testing after learning of the error, and that the jury's award for medical expenses alone was "consistent with its finding that the only adverse effect on [the child] from the . . . incident was his one-night stay in the hospital." *Id.* at 78. (Footnote omitted.)

[3] We note that the defendants' counsel stated in his closing argument that the plaintiff had incurred substantial medical expenses. He said:

> I do think Mr. Duchamp is entitled to . . . an award of medical bills for Dr. Mazzola, Cooper, Sanford, Jones, HealthSouth, Quest, Dr. Murphy, Dr. Lavis, and River Oaks. And if you add all of those numbers together, that's $18, 422.10. In addition, he's entitled to prescription costs for hydrocodone, Skelaxin, Zertac, Viac, Celebrex, that's another $839.74, and you add those two figures together, that's $19,261.84.

Earlier in his closing argument, the defendants' counsel had specifically discussed the medication the plaintiff had taken for injuries he alleged were sustained in the accident, stating "We certainly acknowledge and we want you to award Mr. Duchamp a figure of $2814. 91. That's the cost of the pain medication, the hydrocodone, the Celebrex, the muscle relaxers."

plaintiff's past pain and suffering in order to evaluate his claim that he would continue to have similar pain that would require similar treatments throughout the remainder of his lifetime.

The record includes the testimony of numerous physicians who treated the plaintiff. On the Monday morning following the accident, the plaintiff visited his internist, Dr. Steven Mazolla, who gave him anti-inflammatory medication as well as muscle-relaxing medication and told him to return if the symptoms worsened. When the plaintiff was still experiencing pain ten days after the accident that was now radiating into his legs, he was prescribed pain medication. Dr. Mazolla stated that the plaintiff reported facial numbness approximately a month after the accident, and that he ordered an M.R.I. Dr. Mazolla stated that his January 26, 2001 report listed findings that the M.R.I. was "abnormal" due to a herniated disk.

In light of the M.R.I. results, Dr. Mazolla referred the plaintiff to a neurosurgeon, Dr. Viraf Cooper and physiatrist, Dr. David Jones. Dr. Jones testified that he first saw the plaintiff on January 16, 2001, for the complaints of soreness and pain in the neck and back radiating into the arms, facial numbness and drooping, and a loss of libido. In addition to the plaintiff's subjective complaints, Dr. Jones noted increased tone, or firmness, along the thoracic and lumbar spine and paraspinals. Dr. Jones also noted objective findings of muscle spasms, which he agreed that "a patient [couldn't] fake[.]" Dr. Jones prescribed an oral steroid medication as well as physical therapy sessions, which continued through October 2001.

In September 2001, Dr. Mazolla met with the plaintiff to discuss lab results for tests he had performed to measure the plaintiff's testosterone levels, in an attempt to ascertain the reason for the loss of libido, which the plaintiff alleges he did not experience before the accident at issue. Dr. Mazolla testified that he prescribed a

6

cream which contains testosterone and the plaintiff reported some improvement.  Dr. Mazolla saw the plaintiff again twice in February 2002, relating to complaints of neck and back pain radiating into the limbs, low libido, hypertension and high glucose levels.  The plaintiff continued to treat with Dr. Mazolla for physicals and blood pressure checks.[4]

In October 2002, Dr. Mazolla also referred the plaintiff to Dr. Stephen O'Neil, a specialist in rehabilitation and physical medicine.  Dr. O'Neil testified that he treated the plaintiff with muscle relaxers and anti-inflammatory medications for muscle spasms and complaints of pain and tingling throughout the neck, back and arms.  At an October 2003 meeting, the plaintiff explained that he had recently been in an automobile accident that had caused "some exacerbation on his right side but no changes on his left side[.]"  Dr. O'Neil stated that he recommended that the plaintiff meet with a specialist in pain management, Dr. Michael McCord, to discuss epidural injections to help ease the neck and back pain.  Dr. McCord testified that he first met with the plaintiff for an injection on October 30, 2003, and that the plaintiff returned on November 13 and December 19, 2003 for subsequent injections.  Dr. McCord explained that the series of three injections inserted medicine that spread into the affected areas of the muscles in the plaintiff's back.  Dr. McCord and Dr. O'Neil both stated that the plaintiff experienced significant relief from the injections.  Both also stated that the plaintiff would more likely than not continue to have problems with his neck in the future and would have to continue the injection series "once or twice a year" throughout his lifetime.

_____

[4] It appears from Dr. Mazolla's testimony that the plaintiff continued to report his chronic pain issues at his appointments, including the facial drooping and loss of libido.  However, our review of Dr. Mazolla's testimony indicates that he did not prescribe any other medications or treatments specific to those complaints after his referrals to the other physicians and specialists.

In October 2002, the plaintiff began treating with Dr. Edward Murphy, a neurologist, for neck and back pain. Dr. Murphy prescribed an anti-inflammatory medication and ordered a second M.R.I. in December 2002, which he stated suggested that the plaintiff had suffered from a disk herniation that was not severe enough to require surgery, as well as some degenerative changes in multilevels. In March 2003, Dr. Murphy suggested the plaintiff begin an exercise program to try to alleviate some of his neck pain by increasing the size and function of the shoulder and back muscles. Dr. Murphy referred the plaintiff to Dr. Jerry Sanford, a chiropractor, who treated the plaintiff from October 2002 until April 2003. He noted objective findings of muscle spasms within the plaintiff's neck, shoulder blades, back, right hip and arms, and also stated that he had noticed and monitored the facial drooping. Dr. Sanford summarized that, overall, the plaintiff responded "well" to treatment, which included exercise and massage therapy, although he stated that he anticipated that the plaintiff would continue to have "flare-ups from time to time" in the future that would require future treatments as needed.

The plaintiff also presented his own testimony regarding the extent of his injuries and his treatments. He stated that he felt stiff and sore following the accident. A week after the accident he stated that he began experiencing "shooting pains down both legs." When he visited Dr. Mazolla's office for the leg pains, he stated that a nurse noticed that the left side of his face and lip was drooping. He saw Dr. Cooper for the facial drooping, which he stated "felt like a windburn or a sunburn." He said that he had "a knot in [his] upper back" which was causing muscle spasms, headaches and numbness in his fingers and that Dr. Jones restricted his physical activities for six months. The plaintiff also testified regarding his visits with the other doctors, stating that he was still experiencing pain two years after his accident when he visited Dr.

8

Sanford. He stated that Dr. Sanford's treatments "really did loosen it up[,]" and that his "lower back ultimately did quit hurting through the treatment[,]" explaining that Dr. Sanford had showed him effective stretches he could perform at home to relax his muscles "when [they] tensed up."

The plaintiff discussed the subsequent automobile accident, which occurred on October 15, 2003 as he and his wife were leaving a store during a shopping trip. He said that he was able to brace himself for the impact, which he said was slight, and only caused him a little soreness. The plaintiff met with Dr. O'Neil on October 17, 2003, at which time Dr. O'Neil referred the plaintiff to Dr. McCord for a series of epidural injections to alleviate the pain the plaintiff continued experiencing. Although the defendants point out that this referral was made only two days after the October 2003 accident, the plaintiff testified that he had made his appointment with Dr. O'Neil two months earlier and that he was continuing to suffer from symptoms related to the October 2003 accident at the time of the appointment. Dr. O'Neil stated that he had been treating the plaintiff prior to that meeting and that the subsequent accident had not altered the conditions that he already was treating.

The plaintiff also described the epidural injections he underwent pursuant to Dr. O'Neil's request. He stated that after the injections, the tingling sensation in his fingers subsided, the knot in his back reduced in size and there was an overall improvement in his range of motion. He said that he "thought the injections were the best treatment that [he] had at that point." However, he also testified that after approximately six months the effect of the injections wore off and the symptoms all returned, including the numbness in his fingers, tingling sensations, large knot in his back, and sharp pains when he moves his neck.

9

The plaintiff stated that during the six months that the injections had been effective, he had been able to try to resume some of his normal activities that he had been unable to participate in since the accident. He said that before the accident he had participated in numerous activities with his children including various sporting activities, as well as golfing with friends and maintaining his yard.

Because the parties had not placed liability at issue, the jury was only called on to consider the amount of damages, if any, that resulted from the collision. At the close of the evidence, the jury awarded the plaintiff damages as outlined above, including $85,000.00 for future medical expenses and no award for future pain and suffering. The record supports the jury's award for future medical expenses, as evidenced by the testimony of the plaintiff's treating physicians. Drs. Sanford and O'Neil stated that the defendant would need to continue to take medications and undergo therapy and would benefit from receiving the injections as needed in the future. Dr. McCord testified that, more probably than not, the plaintiff would need to have at least one injection, or possibly the full series of three, on a yearly basis.

The plaintiff's testimony demonstrates a pattern of chronic pain that has continued throughout the years following the accident. Although the plaintiff has been able to maintain his employment and participate in some activities, he, his wife, and his daughter testified that he continued to experience pain. In addition, his treating physicians, including Drs. O'Neil, Sanford and McCord, stated that he would likely continue to experience pain from the condition in the future. Based on our review of the record, it is clear that no reasonable juror could have concluded that the plaintiff will incur $85,000 in expenses for future medical treatments but not incur any future pain and suffering. The plaintiff had been suffering from pain due to the accident for nearly three years at the time of the trial. A forensic economist testified

that the plaintiff's life expectancy is approximately 24 years; if he were to suffer from similar pain during that time, requiring treatment through oral medication, therapy sessions, or injection treatments, he would certainly be entitled to an award for future pain and suffering.

After reviewing the record in this case, we do not find that reasonable minds could differ on the entitlement to damages for future pain and suffering. We therefore conclude that the district court did not err in granting the plaintiff's motion for JNOV and awarding the plaintiff $100,000.00 in damages for future pain and suffering. This assignment is without merit.

*Future Medical Expenses Award*

For their second assignment, the defendants alternatively argue that the "jury erred in finding that the plaintiff would not suffer future pain and suffering but providing an award for future medical expenses."[5]

"An award of special damages is reviewed pursuant to the manifest error standard of review[.]" *Thibeaux v. Trotter*, 04-482, p. 4 (La.App. 3 Cir. 9/29/04), 883 So.2d 1128, 1131, *writ denied*, 04-2692 (La. 2/18/05), 896 So.2d 31. As we noted in our review above, at least three of the plaintiff's treating physicians testified that, more likely than not, the plaintiff would continue to experience chronic pain throughout his lifetime. The plaintiff provided extensive testimony offered by himself, his family and his doctors relating to the degree and type of pain he had suffered since the accident. While our review of the testimony indicates that the doctors suggested treatments that may help to alleviate the pain, they stated that these treatments would not eliminate it completely and he could continue to experience

---

[5] Although the defendants suggest on appeal that the trial court erred in failing to consider this point of view in its ruling on the plaintiff's Motion for Judgment Notwithstanding the Verdict, the defendants did not file their own Motion for Judgment Notwithstanding Verdict below.

"flare-ups" indefinitely.  Consequently, we find no clear error in the jury's decision to grant the plaintiff $85,000.00 for future medical costs.  This assignment is without merit.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed.  All costs of this matter are assigned to the defendants, State Farm Mutual Automobile Insurance Company, Ernest Loftin, and the Succession of Ernest Loftin.

**AFFIRMED.**