STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-173

RUBEN KILBER

VERSUS

PNK (LAKE CHARLES), LLC, ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2013-3879
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of Jimmie C. Peters, James T. Genovese, and John E. Conery, Judges.

AFFIRMED.

**Barry A. Roach**
**Shane K. Hinch**
**Christopher S. Lacombe**
**Larry A. Roach, Inc.**
**2917 Ryan Street**
**Lake Charles, Louisiana  70601**
**(337) 433-8504**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Ruben Kilber**

**Todd M. Ammons**
**Stockwell, Sievert, Viccellio, Clements & Shaddock L.L.P.**
**Post Office Box 2900**
**Lake Charles, Louisiana  70602**
**(337) 436-9491**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **PNK (Lake Charles), LLC**

**J. Lee Hoffoss, Jr.**
**Donald W. McKnight**
**Hoffoss Devall, LLC**
**517 West College Street**
**Lake Charles, Louisiana  70601**
**(337) 433-2053**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Rodney Robichau**

**CONERY, Judge.**

Plaintiff, Ruben Kilber, appeals the trial court's judgment granting two separate summary judgments, the first in favor of PNK (Lake Charles), LLC d/b/a L'Auberge Du Lac Casino Resort (L'Auberge), and the second, a partial summary judgment in favor of defendant, Rodney Robichau. For the following reasons, we affirm the trial court's ruling dismissing all claims against L'Auberge. We further affirm the partial summary judgment granted in favor of Mr. Robichau, dismissing Mr. Kilber's "conspiracy claim" against him.

## FACTS

The facts are not in dispute as the entire incident was recorded on a time-stamped video. As shown on the video, at approximately 3:22 A.M. on August 24, 2012, Mr. Robichau was sitting at one of L'Auberge's "high limit" blackjack tables. Joseph Bruno, his nephew, was not playing, but was occupying the last available seat when Mr. Kilber approached the table and asked Mr. Bruno to give up his seat so that he could play. Words were exchanged between the two men. Mr. Bruno got up, and Mr. Kilber took the seat. At 3:22:30, Mr. Kilber gestured to Brandi Crawford, the dealer, regarding his ongoing dispute with Mr. Bruno about the seat, and at 3:22:32, Ms. Crawford signaled the pit boss, Greg Alexander, to come to the table.

At 3:22:37-45, Mr. Robichau intervened and took Mr. Bruno by the shoulders and directed him away from Mr. Kilber and the blackjack table in an obvious attempt to calm Mr. Bruno down. While Mr. Bruno was being restrained by Mr. Robichau, Mr. Alexander went directly to the phone in the pit and called security at 3:22:49. During the time Mr. Alexander was on the phone with security, between 3:22:49 - 3:22:55, Mr. Robichau was successful in calming Mr. Bruno

down and leading him at 3:23:02 further away from the blackjack table. Mr. Robichau had returned to the blackjack table, when at 3:23:12, Mr. Bruno again approached the blackjack table, grabbed Mr. Kilber from behind, and threw him to the floor.

The first security officer arrived on the scene at 3:23:27, only fifty-five seconds after Ms. Crawford first summoned Mr. Alexander to the table, and only thirty-eight seconds after the call to security by Mr. Alexander. When security arrived, Mr. Robichau and two other patrons were already attempting to pull Mr. Bruno off Mr. Kilber and restrain him.

## PROCEDURAL HISTORY

Mr. Kilber claimed he was injured as a result of the incident and filed suit against L'Auberge; L'Auberge's insurer, Zurich American Insurance Company (Zurich); Mr. Bruno; and Mr. Robichau seeking damages for the alleged injuries he sustained in the altercation.

Mr. Robichau filed an answer to Mr. Kilber's petition for damages, which included a reconventional demand against Mr. Kilber, alleging that Mr. Kilber was the aggressor in the altercation. Mr. Robichau claimed he was not responsible for Mr. Kilber's alleged injuries. Additionally, he sought damages for a wrist injury sustained in the altercation. Mr. Robichau included a cross-claim against L'Auberge and Zurich in his answer and reconventional demand. Mr. Robichau claimed that L'Auberge was negligent in failing to properly respond to the altercation and sought damages against L'Auberge in his cross-claim for the alleged injuries to his wrist.

L'Auberge responded by filing a motion for summary judgment seeking to dismiss the claims of Mr. Kilber and Mr. Robichau. Mr. Robichau filed a cross-

2

motion for summary judgment against L'Auberge. The trial court heard the motions on April 16, 2014, and on May 5, 2014, issued a judgment granting L'Auberge's motion for summary judgment dismissing the claims of Mr. Robichau. That judgment dismissing Mr. Robichau's claims against L'Auberge is now final, as no writ or appeal was taken by Mr. Robichau from the May 5, 2014 judgment.

However, in a separate May 5, 2014 judgment, the trial court denied L'Auberge's motion for summary judgment seeking to dismiss Mr. Kilber's claims. After denying L'Auberge's motion for summary judgment as to Mr. Kilber, the trial court further noted in its oral reasons for judgment, "that these things can always get revisited once we hear from everybody." The record shows that extensive additional discovery was then undertaken.

After discovery was complete, L'Auberge filed a second motion for summary judgment on the issue of liability as to Mr. Kilber's claims, and this time the trial court granted the motion. The trial court signed a judgment on December 22, 2015, dismissing the entirety of Mr. Kilber's claims against L'Auberge with prejudice and at his cost. Mr. Kilber timely appealed.

In Mr. Kilber's original petition, he did not specifically plead that a conspiracy existed between Mr. Bruno and Mr. Robichau. However, the facts pled in his petition arguably may have supported a claim that Mr. Bruno and Mr. Robichau engaged in a conspiracy to harm Mr. Kilber and thus are solidarily liable for his alleged injuries.

Considering the potential solidary liability of Mr. Robichau and Mr. Bruno, Mr. Robichau filed a motion for partial summary judgment on the issue of conspiracy. The trial court granted a partial summary judgment in favor of Mr. Robichau on this issue and stated on the record at the hearing on August 24, 2015,

3

"I find that there is no genuine issue of material fact to establish any kind of a conspiracy between the two to attack and injure Mr. Kilber." The judgment signed on December 22, 2015, and filed on December 29, 2015, dismissed Mr. Kilber's claim for conspiracy against Mr. Robichau with prejudice and assessed costs to Mr. Kilber on this particular claim.

The trial court, however, denied the second part of Mr. Robichau's motion for partial summary judgment seeking the dismissal of all of Mr. Kilber's claims against him. Mr. Kilber claimed that Mr. Robichau was directly at fault for participating in the altercation between him and Mr. Bruno and contributed to his injuries. Counsel for Mr. Robichau argued that Mr. Robichau was simply trying to break up the fight and that the medical testimony of Mr. Kilber's own doctor indicated that his shoulder injury and subsequent surgery was caused by Mr. Bruno and not Mr. Robichau.

The trial court held, "That has to be a jury issue. We can't advocate to the doctor that decision. Now, will it be persuasive to a jury? Probably. But, that's for the jury to take and do whatever they want to do with it[.]" The trial court then confirmed that Mr. Robichau's motion for summary judgment was granted in part and denied in part.[1]

## LAW AND DISCUSSION

### *Standard of Review*

It is well settled that "[a]ppellate review of the granting of a motion for summary judgment is *de novo*, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate." *Smitko v.*

---

[1] Mr. Robichau did not appeal the trial court's ruling denying the partial summary judgment seeking to dismiss Mr. Kilber's remaining claim of injuries related to the altercation.

*Gulf S. Shrimp, Inc.*, 11-2566, p. 7 (La. 7/2/12), 94 So.3d 750, 755. Summary judgment proceedings are "designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2).[2] Additionally, "After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted." La.Code Civ.P. art. 966(C)(1). Further, pursuant to La.Code Civ.P. art. 966(C)(2):

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

## ASSIGNMENTS OF ERROR

Mr. Kilber asserts two assignments of error on appeal regarding the trial court's granting of the summary judgment dismissing L'Auberge:

I.  The trial court erred by granting PNK's Motion for Summary Judgment, based on the same facts and law as previously presented in PNK's initial summary judgment that the trial court relied on to deny its initial summary judgment, in direct contravention of the law of the case doctrine.

II. The trial court erred by granting PNK's Motion for Summary Judgment when there are still genuine issues of material fact concerning PNK's response and the reasonable foreseeability of the incident.

---

[2] A revision to Louisiana Code of Civil Procedure Article 966 became effective on January 1, 2016. However, the hearing on the motions for summary judgment was held on September 14, 2015, and judgment rendered on December 22, 2015. Therefore, the prior version of La.Code Civ.P. art. 966 is applicable to this appeal.

5

Mr. Kilber's third assignment of error is related to the trial court's granting of the partial summary judgment dismissing his claim for conspiracy against Mr. Robichau:

> III.    The trial court erred by granting Mr. Robichau's Motion for Partial Summary Judgment when there are still genuine issues of material fact regarding a conspiracy between Mr. Bruno and Mr. Robichau to harm Mr. Kilber.

### A*ssignment of Error One - Re-urged Motion for Summary Judgment*

Mr. Kilber's argues that the trial court was precluded from hearing L'Auberge's second motion for summary judgment after denying L'Auberge's original motion for summary judgment on May 5, 2014, as it is the law of the case. To the contrary, this circuit and other circuits have repeatedly held, "there is no prohibition against re-urging a motion for summary judgment." *Romero v. Charter Behavioral Health Sys. of Lake Charles*, 00-1108, p. 3 (La.App. 3 Cir. 1/31/01), 780 So.2d 530, 532. Moreover, "The doctrine does not apply in the context of a trial court ruling on interlocutory issues[.]" *Land v. Vidrine*, 10-1342, p. 9 (La. 3/15/11), 62 So.3d 36, 42. The denial of a motion for summary judgment is an interlocutory judgment that cannot be appealed. *See* La.Code Civ.P. arts. 968, 1841, and 2083(C). It is, therefore, subject to change or revision at any time prior to final judgment on the matter. *See VaSalle v. Wal-Mart Stores, Inc.*, 01-0462 (La. 11/28/01), 801 So.2d 331.

Mr. Kilber cites *Monumental Life Insurance Co. v. Landry*, 02-891, p. 2 (La.App. 3 Cir. 2/19/03), 846 So.2d 798, 800, in support of his argument that a re-urged motion for summary judgment on the same issue must be supported by "meaningful additions which clearly establish that there is no longer any issue of material fact to be determined by a trial on the merits." He claims that

L'Auberge's second motion for summary judgment did not so supplement the record.

L'Auberge offered the security camera video of the incident, as well as the affidavits of Jamie Goodwin, the dealer, Mr. Alexander, Josh Thomas, the security supervisor, and Jerry Forester, the risk manager in support of its first motion for summary judgment.

In support of its second motion for summary judgment, L'Auberge offered the security video and portions of the depositions of Dr. Alain Elbaz, Mr. Kilber's treating physician, and L'Auberge employees, Mr. Alexander, Ms. Crawford, and Mr. Thomas.

After the first motion for summary judgment was denied by the trial court, intensive discovery was conducted by L'Auberge, which included the above mentioned depositions. The record further reflects that the deposition testimony offered in support of the second motion for summary judgment provided greater detail about the incident than did the initial affidavits offered in support of L'Auberge's first motion for summary judgment. In their depositions, the L'Auberge employees explained their actions as shown on the time stamped security video.

Mr. Kilber sought and was granted an unopposed continuance of the hearing on L'Auberge's second motion for summary judgment. Mr. Kilber retained and took the deposition of an expert, participated in all of the depositions of the participants and witnesses, and requested additional time to prepare for the summary judgment hearing. Despite having additional time to oppose L'Auberge's second motion for summary judgment, Mr. Kilber failed to submit any additional documentation in the form of affidavits or deposition testimony in

opposition to L'Auberge's second motion. Instead, Mr. Kilber only attached to his memorandum in opposition to L'Auberge's second motion for summary judgment a copy of L'Auberge's memorandum in support of its first motion for summary judgment.[3]

We find that the documentation submitted by L'Auberge in support of its second motion for summary judgment more than adequately meets the standard set in *Monumental Life* that the record be supplemented with "meaningful additions which clearly establish that there is no longer any issue of material fact to be determined by a trial on the merits." *Monumental Life*, 846 So.2d at 800.

### *Assignment of Error Two - Genuine Issues of Material Fact*

The record of the hearing on L'Auberge's second motion for summary judgment reflects that the trial court heard argument from counsel and then viewed the video of the incident at sidebar. Following the viewing of the video, the trial court granted L'Auberge's second motion for summary judgment and stated:

> I'm going to grant the Motion for Summary Judgment by PNK L'[A]uberge. And, as I recall, last time it was not an easy motion to deny. And, I think we were early on, and probably needed the deposition testimony of those witnesses. And, I remember the thought being that, absent some revelation from those witnesses that would tend to incriminate L'[A]uberge, that it would be a -- it would be hard to justify keeping them in.

> And, I did look at the *Morales vs. Boomtown* decision. I found it to be very persuasive, very much on point factually legally on the issue of reasonable -- reasonably foreseeable. I noticed in the deposition transcript from the participants -- I think it was Kilber who said he had been in this part of the casino many times, had never seen a fight.

> It's clear that the employees, the dealer, the pit boss were responding as soon as it was evident that there was anger, verbal anger. And, then security responds pretty quickly, quickly enough.

---

[3]In opposition to L'Auberge's first motion for summary judgment, Mr. Kilber submitted his own affidavit and the "PNK Security Policy & Procedures."

This is not like the Pizza Hut case that was cited by the plaintiffs where you have a security guard who is sitting at a table, not prominent -- not prominently displayed to ward off people coming into the Pizza Hut with a gun, that they know happens. Instead, in that case someone came in with a gun, didn't see the security person, and that led to injuries. Even that case is, I think, subject to some legitimate criticism. But, it's just not the same case. This is *Morales*. And, there is just no -- the issue of what was reasonably foreseeable by L'[A]uberge was not that this was going to happen the way it did. And, I find their response was adequate. So, I'm granting that Motion for Summary Judgment . . . .

*Morales v. Boomtown, L.L.C. of Delaware*, 09-194 (La.App. 5 Cir. 10/27/09), 27 So.3d 914, cited by the trial court, also involved a physical altercation between two casino patrons, which involved a dispute over the proceeds of a slot machine payout. In *Morales*, the plaintiff claimed that casino personnel failed to alert security immediately when a verbal argument broke out between the two patrons. The security guard advised the plaintiff to ignore the other patron and moved her away from the situation to another aisle in the slot machine area.

The trial court granted the casino's motion for summary judgment, finding that the alleged criminal conduct of one patron attacking the other, as in this case, was not reasonably foreseeable, that the casino provided adequately trained security officers for the protection of its customers and that they acted appropriately given the circumstances. In affirming the trial court's ruling granting summary judgment in favor of the casino, the appellate court reiterated the law and the duty owed to a patron by a business owner which would be plaintiff's burden at trial to prove:

A business proprietor's duty to his patrons includes that the proprietor must refrain from conduct likely to cause injury to a guest and he must maintain the premises free from unreasonable risks of harm or warn patrons of known dangers. Generally, there is no duty to protect others from the criminal acts of third parties. Business owners are not insurers of their patrons' safety, but they do have a

9

> duty to implement reasonable measures to protect patrons from criminal acts when those acts are reasonably foreseeable.
>
> The foreseeability of the crime risk on the defendant's property and the gravity of the risk determines the existence and extent of the defendant's duty. The plaintiff has the burden of establishing the duty defendant owed under the circumstances.

*Id.* at 916-17 (citations omitted).

The facts in the case before us even more strongly favor the casino. One of the claims in *Morales* was that the casino did not immediately summon security after being alerted to a verbal confrontation between patrons. The uncontradicted evidence presented by L'Auberge in its second motion for summary judgment shows that when the verbal incident began, the dealer reacted within two seconds. Security was immediately called and responded within thirty-eight seconds from being called to stop the physical altercation. Mr. Robichau and another patron were arguably trying to pull Mr. Bruno away from Mr. Kilber when security arrived.

Mr. Kilber testified in his deposition that he had been to this part of the casino on many occasions and had never seen a fight. Likewise, Ms. Crawford testified in her deposition that in her time at L'Auberge, she had also never seen a "physical altercation." Like the altercation in *Morales*, there was no prior relationship between the parties or animosity that could have led to the physical confrontation that occurred, or would have created a duty on the part of L'Auberge to warn Mr. Kilber of any impending danger.

Due to the aggressive actions of Mr. Bruno immediately prior to the physical altercation, Mr. Kilber was already on notice and had, in fact, signaled to Ms. Crawford who called Mr. Alexander within two seconds. Mr. Alexander immediately called security, who arrived less than a minute after Mr. Kilber

signaled to Ms. Crawford and within thirty-eight seconds of the call to security. No genuine issue of material fact existed, thanks in no small part to the time stamped video. We find on *de novo* review, as did the trial court, that L'Auberge could have done nothing more to prevent this altercation and acted promptly and appropriately once it began.

### *Assignment of Error Three - Conspiracy Between Mr. Bruno and Mr. Robichau*

Mr. Kilber did not specifically plead that a conspiracy existed between Mr. Bruno and Mr. Robichau to cause him harm. However, the facts pled in his petition may have arguably supported a claim that Mr. Bruno and Mr. Robichau engaged in a conspiracy to harm him, and are solidarily liable for his alleged injuries. If such an allegation may be inferred from the pleadings, we agree with the trial court's ruling that there is no genuine issue of material fact relative to whether there was a conspiracy between Mr. Robichau and Mr. Bruno as defined by Louisiana law.

Louisiana Civil Code Article 2324(A) provides, "He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act."

In order for a conspiracy to exist, Mr. Kilber must prove that there was an agreement between Mr. Robichau and Mr. Bruno to commit the act that allegedly resulted in his injuries. A panel of this court addressed the burden of proof at trial in order to establish a claim of conspiracy in *Owens v. Byerly*, 09-262, p. 6 (La.App. 3 Cir. 10/7/09), 23 So.3d 393, 398, *writ denied*, 10-117 (La. 4/16/10), 31 So.3d 1063 (emphasis added), and stated, "A plaintiff attempting to recover for a tort based on a conspiracy theory must prove that '**an agreement existed to commit an illegal or tortious act, which act was actually committed, which**

11

**resulted in the plaintiff's injury, and there was an agreement as to the intended outcome or result**.'"

At the partial summary judgment hearing, Mr. Kilber argued to the trial court:

> I think you can infer from Mr. Bruno's actions what was going on, that he's engaging Kilber so he can commit a battery against him. So, then Mr. Robichau can say, well, yeah, let me join in, too. If he **infers that knowledge from his co-conspirator and goes in there, then a conspiracy can be alleged.** And, I think it's an issue of fact for the jury to see the video, to look at Mr. Robichau's actions and determine, okay, was he conspiring [with] Mr. Bruno to commit this battery.

(Emphasis added.)

However, a *de novo* review of the record, including the video of the incident, does not create a genuine issue of material fact necessary to preclude summary judgment in favor of Mr. Robichau. We agree with the trial court that there is absolutely no evidence in the record to establish that the required "agreement existed" to support a claim for conspiracy. *Owens*, 23 So.3d at 398. We therefore affirm the trial court's ruling granting partial summary judgment in favor of Mr. Robichau, dismissing Mr. Kilber's claim for conspiracy.

## CONCLUSION

For the foregoing reasons we affirm the December 22, 2015 judgment of the trial court, finding there are no material facts that preclude the trial court's ruling granting the motion for summary judgment filed by PNK (Lake Charles), LLC d/b/a L'Auberge Du Lac Casino Resort, dismissing plaintiff, Ruben Kilber's claims with prejudice and at his cost as to this defendant.

12

Also for the foregoing reasons, Ruben Kilber's appeal of the trial court's ruling granting partial summary judgment in favor of Rodney Robichau on the conspiracy claim is affirmed. All costs of this appeal are assessed to Ruben Kilber.

**AFFIRMED.**