PETTIGREW, J.
*726 In this workers' compensation case, a discharged former attorney for the claimant appeals a judgment dismissing his intervention and motions to vacate or annul a settlement and granting his former client's reconventional demand. The former client answers the appeal, seeking attorney fees and costs for work done on appeal. For the reasons set forth herein, we affirm the judgment and deny the answer to the appeal.
FACTS AND PROCEDURAL HISTORY
Raydell Duhe, Sr. was injured in the course and scope of his employment as a pipefitter with DCR Industrial Services ("DCR") on August 27, 2013. Duhe hired attorney Robert A. Lenter to represent him in the workers' compensation matter. Duhe and Lenter executed a Contract of Representation on September 10, 2013, which provided for attorney fees of "20% of any 'instituted' indemnity, MSA, and/or settlement, plus any Court awarded Attorney's fees, plus any additional expenses of pursuing the claim." The contract also contained the following clause regarding withdrawal or dismissal of the attorney:
WITHDRAWAL BY EITHER ATTORNEY OR CLIENT: Either you or said attorneys can withdraw from your case by giving reasonable written notice to the other. Any withdrawal by said attorneys shall be consistent with the Louisiana Rules of Professional Conduct. In the event that you dismiss said attorneys you hereby give said attorneys a lien on your future recovery, if any, to secure payment of our costs and attorney fee shall be the agreed percentage of the last settlement offer obtained by said attorneys prior to dismissal or withdrawal. [Emphasis added].
Duhe began receiving indemnity benefits at the weekly rate of $605.00, effective August 27, 2013. His indemnity checks were sent directly to Lenter's office, and Lenter deducted his attorney fees before forwarding the remainder to Duhe. At some point, Duhe allegedly fired Lenter, but then rehired him based on an agreement that Lenter would only take ten percent for attorney fees from each indemnity check. On May 17, 2017, Lenter filed a Disputed Claim for Compensation on Duhe's behalf.
Dissatisfied with Lenter's representation, Duhe discharged Lenter as his attorney by certified mail on June 22, 2017, and then again by follow-up text on June 26, 2017. Around the same time, Duhe filed a complaint against Lenter with the Louisiana Attorney Disciplinary Board. Thereafter, on August 7, 2017, Lenter filed a Motion to Withdraw as Attorney of Record and a Petition of Intervention, seeking to establish a lien for his attorney fees. Lenter alleged in his intervention that since he provided "reasonable and necessary" services to Duhe in accordance with their Contract of Representation and was discharged without cause, he is entitled to statutory attorney fees as reasonable compensation for the legal services rendered. On August 8, 2017, the workers' compensation judge ("WCJ") granted Lenter's motion to withdraw as attorney of record and signed an order decreeing:
*727 Lenter ... [is] entitled to make claim for statutory attorney fees as reasonable compensation for legal services rendered on behalf of [Duhe], pursuant to the State of Louisiana Worker's [sic] Compensation Act, if and when [Duhe] settles this claim or receives a judgment in this matter. This claim for attorney fees should act as a lien on the underlying claim, causing [Duhe] to resolve the issue of attorney fees owed to [Lenter] prior to collecting on a judgment or entering into a lump sum settlement in this matter.
Duhe hired new counsel, James F. Scott, III and James "Brad" Dill, of the law offices of Workers' Compensation, L.L.C., who enrolled as counsel of record on August 21, 2017. On December 1, 2017, a joint request was filed by Duhe, DCR, and DCR's insurance carrier, Valley Forge Insurance Company ("Valley Forge"), for approval of a lump sum settlement of the indemnity portion of Duhe's workers' compensation claim for $195,000.00. The joint request also stated:
Further, as part of this settlement agreement, the claimant, Raydell Duhe, Sr., has agreed to be responsible for any and all attorney fees incurred by any attorneys, including but not limited to any attorney lien which may be asserted by his prior attorney Robert Lenter.
...
The aforementioned [attorney] fee for which the claimant, Raydell Duhe, Sr., is responsible will be fixed at THIRTY-NINE THOUSAND AND NO/100 DOLLARS ($39,000.00) to be paid out of the proceeds of this settlement, pursuant to [La. R.S.] 23:1141.[1 ]
This settlement agreement was approved by the WCJ on December 1, 2017, including the provision setting the attorney fees at $39,000.00, and the disputed claim for indemnity benefits was dismissed with prejudice. The WCJ also signed orders stating that Dill is entitled to a $39,000.00 attorney fee, to be paid out of the lump sum settlement of the indemnity claim, as well as a $2,420.00 attorney fee, in accordance with the terms of the contingency fee agreement, for the recovery of $12,100.00 in workers' compensation benefits for Duhe between July 18, 2017 and December 1, 2017.
On January 4, 2018, Lenter filed a motion requesting that the WCJ enforce the August 8, 2017 order acknowledging his lien for attorney fees and obligating Duhe to resolve the issue of Lenter's attorney fees prior to entering into a lump sum settlement. Lenter also asked the WCJ to vacate or recall its December 1, 2017 order approving Dill's attorney fees on the $195,000.00 settlement. Lenter alleged that the amount of his lien due to his representation of Duhe prior to the settlement was $64,460.21, representing twenty percent of the $322,301.05[2] in benefits paid to Duhe, *728 subject to a credit for any attorney fees already paid to Lenter by Duhe. Additionally, Lenter alleged that he was entitled to seventy-five percent ($29,250.00) of the $39,000.00 attorney fees awarded on the $195,000.00 settlement, as Dill did little more than finalize a settlement offer, which was initially made by Lenter.
On January 19, 2018, Duhe and Workers' Compensation, L.L.C. filed a joint answer to Lenter's Petition of Intervention, and Duhe filed a reconventional demand against Lenter. In his reconventional demand, Duhe alleged that following Lenter's termination, four indemnity benefit checks were sent to Lenter's office erroneously, and Lenter deposited and retained the entire amounts, totaling $2,420.00, despite repeated requests for the money to be returned to Duhe. Duhe also claimed that Lenter refused to return his case file, despite numerous requests. Duhe and Workers' Compensation, L.L.C. alleged that the maximum attorney fees payable on the $195,000.00 indemnity-only settlement was $39,000.00, and that any attorney fees to which Lenter may be entitled as a result of the settlement must be based on quantum meruit and must be reduced by the $2,420.00 still owed to Duhe. In his reconventional demand, Duhe alleged that in the event the WCJ determined that Lenter was not entitled to any attorney fees on the settlement, Lenter owes Duhe $2,420.00, plus interest, for the above-referenced erroneously withheld indemnity benefits.[3]
A hearing was held on Lenter's intervention and Duhe's reconventional demand on January 24, 2018. At the hearing, Lenter testified that pursuant to their agreement, he took his attorney fees directly out of Duhe's weekly indemnity benefit checks, and he forwarded the remainder to Duhe. Although he initially deducted his entire twenty percent attorney fees from each check, he testified that Duhe needed more money to live on, so he agreed that he would only deduct ten percent from each weekly check and would collect the remaining ten percent when the case was settled. Lenter's testimony about the amount of his claim for the remaining unpaid fee was unclear. Lenter initially testified that the remaining uncollected attorney fees on the indemnity benefits was $7,744.00; however, he later testified that the attorney fees due after giving Duhe credit for fees already paid was $56,560.00; and in an exhibit prepared by Lenter, he calculated his uncollected attorney fees on the indemnity benefits as $15,972.00. Lenter further testified that he had negotiated a $195,000.00 settlement offer for Duhe's claim in January 2017, but Duhe wanted more money, so the offer was not accepted. Since Duhe later settled his claim for $195,000.00, which was the amount of the offer negotiated by Lenter, Lenter claimed that he should be entitled to the majority of the attorney fees on that settlement.
Although he acknowledged that he was discharged by Duhe in late June 2017, Lenter contended that he continued representing Duhe for some time after that termination, because Duhe changed his mind and rehired him when Lenter began "helping him with [obtaining] his narcotics." Lenter claimed that he actually continued representing Duhe until "sometime in July" when he learned that Duhe had filed a complaint against him with the Louisiana Attorney Disciplinary Board. Lenter admitted that he had no documentation to prove that Duhe rehired him, but he testified that "[t]he documentation comes from the work that I did for him afterwards. If he had not asked me to continue, I would *729 not have spent days getting him his narcotics and gotten him all that." Lenter testified that he did not know that Duhe hired new counsel, and did not learn, until the end of December 2017, that Duhe's claim for indemnity benefits had been settled and an award for attorney fees approved without his knowledge or involvement.
Regarding Duhe's claim for reduction of any attorney fees due to Lenter and his reconventional demand for the unpaid indemnity benefits, Lenter testified that he hand-wrote and personally delivered two checks to Duhe for $605.00 each in the summer of 2017, but that he withheld the remaining $1,210.00 to cover his unpaid attorney fees. Lenter also testified that in January 2018, on advice of his own counsel, he sent Duhe the remaining two checks for $605.00. However, Lenter produced no evidence of these payments at the hearing, stating that all of his files, including his bank records which would prove these payments, were outside in his car.
Duhe testified that he fired Lenter for cause in June 2017, after having numerous problems with him over the years. Duhe often had trouble getting in touch with Lenter by phone or in person and explained that even when he was able to get an appointment to see Lenter, the appointment was usually cancelled. When he needed assistance finding an approved doctor or getting his prescriptions covered by the workers' compensation insurer, Duhe testified that Lenter told him to handle it himself and said that he was "supposed to suffer" while he was on workers' compensation. Duhe also had trouble obtaining his weekly indemnity benefits from Lenter. Duhe testified that his checks from Lenter were almost always late. Although Lenter blamed the postal service for the lost or delayed checks, Duhe believed that Lenter was either mailing the checks late or not mailing them at all. At some point, Duhe began driving from his home in Kentwood to Lenter's office on Canal Street in New Orleans each week to pick up his checks to eliminate the delay. However, on several occasions, he received checks from Lenter for his indemnity benefits that were not honored by the bank due to insufficient funds in Lenter's account.
Duhe also became concerned when he received letters stating that a judgment had been taken against him as a result of a loan Lenter had obtained to finance Duhe's claim. Duhe denied being aware of the loan or receiving any of the funds from the loan, which he believed was for "$1,800 or $2,500." However, he testified that "[m]y name was on there. He borrowed it, you know, I guess on my settlement.... [a]nd that worried me. So I called and tried to get in touch with him because the bank -- the court ruled against us pursuing me and him. And I interpreted as they wanted me to pay. So I called him and he said don't worry about it. But they sent me quite a few letters." Duhe also testified that he was skeptical about Lenter's statements to him regarding the settlement offers he was receiving from Valley Forge for his claim. According to Duhe, the amounts of the alleged settlement offers changed dramatically each time he spoke to Lenter, and Duhe believed something was not right. He testified that "it was just too crazy. I was scared. I didn't think he was telling me the truth." Ultimately, Duhe discharged Lenter, hired new counsel, and filed a complaint against Lenter with the Louisiana Attorney Disciplinary Board.
Duhe denied Lenter's allegation that he agreed to rehire him after firing him in June 2017, although he admitted that he had rehired Lenter after firing him a few years earlier.[4] In fact, Duhe testified that *730 after he finally discharged Lenter in June 2017, Lenter "didn't want to stop," so Duhe called the insurance company to inform them that Lenter no longer represented him and instructed them not to discuss his claim with Lenter anymore.
Duhe testified that after being terminated in June 2017, Lenter would not answer his texts, withheld indemnity benefits that he continued to receive for Duhe, and refused to turn over Duhe's case file. Despite making numerous requests for the four weeks of withheld indemnity benefits, Duhe testified that the only two checks he received from Lenter after firing him were the ones sent to him in January 2018 after the reconventional demand was filed, and that the other two checks, totaling $1,210.00, were still outstanding. Duhe disputed Lenter's testimony that he personally delivered the other two checks to Duhe, stating that he did not see Lenter again after firing him. Duhe also testified that he made numerous requests to Lenter for his case file, but that he never received it. Duhe drove to Lenter's office in New Orleans twice to pick up his file, but testified that the office looked abandoned, and he was told that his file could not be located.[5]
Sheryl Story, counsel for DCR and Valley Forge, testified regarding her knowledge of Lenter's efforts to settle Duhe's claim. According to Story, both she and another attorney in her office, George Escher, communicated with Lenter regarding Duhe's claim. When asked about Lenter's assertion that he had negotiated a settlement offer for Duhe of $195,000.00, Story recalled that Lenter made a demand to settle the indemnity portion of the claim for $195,000.00 in June 2016, but she denied that her client made any offer at all to settle at that time.
Dill testified about the work he performed to settle the indemnity portion of Duhe's claim once he took over the case. Since Lenter would not return Duhe's case file, Dill testified that he had to attempt to recreate the file through discovery. Through his efforts, Dill was able to obtain approximately 2,300 pages of medical records. He set up a pretrial mediation conference and had a trial date set, and ultimately, he was able to settle the indemnity portion of Duhe's claim for $195,000.00. Dill testified that he also spoke to or met with Duhe regularly, made sure Duhe received his indemnity benefits timely prior to the settlement, and took steps to preserve Duhe's social security disability benefits.
After the hearing, the WCJ concluded that Lenter was not entitled to any further attorney fees or payment of any type and rendered judgment on February 9, 2018, dismissing Lenter's intervention and motions with prejudice and authorizing the release of the $39,000.00 attorney fees on the settlement to Workers' Compensation, L.L.C. The WCJ also granted Duhe's reconventional demand, ordering Lenter to repay the remaining $1,210.00 in indemnity benefits owed to Duhe.
*731 Lenter appealed the February 9, 2018 judgment, arguing that the WCJ erred in: approving the compromise of Duhe's claim despite the order recognizing his claim for attorney fees; denying his motions to enforce the August 8, 2017 order and recall the December 1, 2017 order approving Dill's attorney fees; failing to vacate and nullify the order approving the settlement; and refusing to award any attorney fees to Lenter in the February 9, 2018 judgment. Duhe answered the appeal, requesting costs and attorney fees for work done on appeal.
DISCUSSION
Lenter argues that the WCJ erred in disregarding the August 8, 2017 order when it approved the lump sum settlement, and thereafter, erred when it refused to enforce the order and recall the approval of attorney fees for Dill. The August 8, 2017 order was interlocutory in nature, and it is well-settled that prior to final judgment a judge may, at its discretion and on its own motion, change the result of interlocutory rulings it finds to be erroneous. VaSalle v. Wal-Mart Stores, Inc., 01-0462, p. 5 (La. 11/28/01), 801 So.2d 331, 334.
Louisiana Revised Statutes 37:218, which governs attorney fee agreements, provides:
A. By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution, or defense of which he is employed, whether the claim or suit be for money or for property. Such interest shall be a special privilege to take rank as a first privilege thereon, superior to all other privileges and security interests under Chapter 9 of the Louisiana Commercial laws. In such contract, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue, or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file and record it with the clerk of court in the parish in which the suit is pending or is to be brought or with the clerk of court in the parish of the client's domicile. After such filing, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client, without the written consent of the other, is null and void and the suit or claim shall be proceeded with as if no such settlement, compromise, discontinuance, or other disposition has been made.
B. The term "fee", as used in this Section, means the agreed upon fee, whether fixed or contingent, and any and all other amounts advanced by the attorney to or on behalf of the client, as permitted by the Rules of Professional Conduct of the Louisiana State Bar Association.
[Emphasis added].
Lenter argues that after the claim was settled without his written consent, in violation of La. R.S. 37:218(A), the WCJ further erred in failing to impose the remedy called for in Subsection A and vacate or nullify the December 1, 2017 orders approving the lump sum settlement and attorney fees. However, despite the provision in Subsection A whereby a settlement entered into without the consent of the attorney is null and void, the Louisiana Supreme Court has interpreted La. R.S. 37:218 in such a way as not to conflict with the client's absolute right to discharge his attorney, with or without cause, or with the prohibition against an attorney acquiring an ownership interest in a client's claim before the attorney has rendered all *732 the legal services. See Saucier v. Hayes Dairy Prod., Inc., 373 So.2d 102, 105 (La. 1978) (on rehearing); Calk v. Highland Const. & Mfg., 376 So.2d 495, 499 (La. 1979) ; Scott v. Kemper Ins. Co., 377 So.2d 66, 69-71 (La. 1979). Thus, La. R.S. 37:218 creates only a privilege in favor of the dismissed attorney, not an ownership right to future proceeds, and the dismissed attorney cannot nullify his former client's settlement or control the litigation in any manner. Gegenheimer v. Cajun Painting, Inc., 96-452, pp. 8-9 (La. App. 3 Cir. 10/9/96), 689 So.2d 457, 461. Thus, although Lenter is entitled to make a claim for his attorney fees and has a privilege on any settlement proceeds for payment of his fees, he is not entitled to control the litigation or "recall," vacate, or nullify the settlement. Thus, the WCJ did not err.
Lenter also argues that the WCJ erred in finding that he "is not entitled to any further attorney fee or payment of any type," and dismissing his intervention. The Louisiana Supreme Court has outlined a specific process for determining the appropriate measure of attorney fees under contingency fee contracts which have been terminated before completion of the representation. This process is dependent upon whether the attorney has been terminated with or without cause. O'Rourke v. Cairns, 95-3054 at pp. 7-8 (La. 11/25/96), 683 So.2d 697, 702.
When an attorney retained under a contingency fee contract is prematurely discharged without cause, the attorney fees are to be determined according to the highest ethical contingency percentage to which the client contractually agreed in any of the contingency fee contracts which he executed, and that fee should in turn be allocated between or among the various attorneys involved in handling the claim on the basis of the following factors, which are codified in Rule 1.5(A) of the Louisiana Rules of Professional Conduct :
(1) The time and labor involved, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.
O'Rourke, 95-3054 at p. 7, 683 So.2d at 702, n.12.
However, when an attorney retained under a contingency fee contract is prematurely discharged for cause , the trial court should first determine the amount of and allocate the attorney fees using the same method used when the attorney is discharged without cause, and thereafter, the court should consider the nature and gravity of the cause which contributed to the dismissal and reduce by a percentage amount the portion discharged counsel otherwise would receive after the allocation based on the factors set forth above. O'Rourke, 95-3054 at pp. 10-11, 683 So.2d at 704.
In holding that Lenter was not entitled to any additional attorney fees or *733 payment, the WCJ clearly determined that Lenter was discharged for cause.[6] The determination of whether an attorney was discharged with or without cause is a factual determination that will not be disturbed on appeal absent a finding of manifest error. O'Rourke, 95-3054 at p. 9, 683 So.2d at 703. Based on the evidence before the WCJ as to Duhe's reasons for discharging Lenter (lack of communication, late payment of benefits, receipt of NSF checks from Lenter, receipt of notice of judgment taken against him on a loan, and uncertainty regarding fluctuating settlement offers), we cannot say that the WCJ's finding that Lenter was terminated for cause was manifestly erroneous.
The $39,000.00 attorney fees approved by the WCJ on the $195,000.00 settlement is the maximum allowable attorney fees under La. R.S. 23:1141(B). Thus, to determine what portion, if any, of this $39,000.00 fee Lenter is entitled to receive, the WCJ must first allocate the fee among the attorneys involved according to the method set forth above and, thereafter, consider the nature and gravity of the cause which contributed to the dismissal and reduce Lenter's portion thereby.
Lenter asserts that he did all of the work to get Duhe's claim to settlement, and that Dill simply came in and finalized the settlement deal that Lenter "was clearly instrumental in developing." The testimony and evidence presented at the hearing revealed that Lenter did attempt to settle the indemnity portion of Duhe's claim; however, Lenter was unable to accomplish this, despite the fact that he represented him for almost four years. In June 2016, Lenter emailed a settlement demand to counsel for DCR and Valley Forge to settle the indemnity portion of the claim for $195,000.00; however, no settlement offer was made by DCR and Valley Forge in response to Lenter's demand. Thereafter, in January 2017, Lenter emailed a settlement demand to counsel for DCR and Valley Forge demanding $356,000.00. Counsel for Valley Forge responded to the email, pointing out that Lenter's last settlement demand had been $195,000.00, but no settlement offer was made in response to Lenter's demand. Although Story testified that she believed that an offer to settle was communicated to Lenter at some point while he represented Duhe, she was certain that it was not for as much as $195,000.00 or $356,000.00.
Lenter filed a document entitled "Hourly Times (sic) Sheet" into evidence at the hearing, which consisted of a vague listing of dates and short notes and indicated that Lenter spent 174 "Billable Hours" on Duhe's case. Nevertheless, despite any work which may have been done by Lenter to move the matter towards settlement, once he was terminated by Duhe, Lenter failed to turn over Duhe's file after numerous requests to do so and despite the fact that Duhe travelled to his office twice to pick up the file. His failure to turn over Duhe's file resulted in Duhe's new counsel having to recreate the entire file through discovery, including over two thousand pages of medical records, in order to proceed with the claim. After recreating the file to the extent possible, Dill scheduled a pretrial conference and trial date and, ultimately, settled the indemnity portion of the claim to Duhe's satisfaction.
*734 Based on the evidence before the court, we cannot say that the WCJ's conclusion that Lenter was not entitled to any portion of the $39,000.00 attorney fees on the lump sum settlement was manifestly erroneous. Furthermore, although Lenter claimed that he was still owed the unpaid portion of his twenty percent attorney fees on indemnity benefits obtained for Duhe during his representation, he did not provide credible evidence of the amount owed. Lenter filed a document in evidence at the hearing, which was simply a typewritten summary of his calculations, claiming that the outstanding balance of his attorney fees on indemnity benefits collected during his representation was $7,744.00. However, later in his testimony, he claimed to be owed $56,560.00 in attorney fees. Lenter testified that his calculation of the $56,560.00 fee was based on twenty percent of all benefits (both medical and indemnity) paid on Duhe's behalf throughout the entire claim (totaling $322,301.05), both before and after Lenter was terminated, with a credit for the $7,744.00 in fees he claimed to have already received. This testimony was contradicted by Lenter's exhibit showing his typewritten calculations, which showed that Lenter had received $15,972.00 in attorney fees during his representation of Duhe. Based on the lack of credible evidence to support Lenter's claim for attorney fees owed, we cannot say that the WCJ's conclusion that Lenter did not prove entitlement to any additional fees was manifestly erroneous.
Similarly, with regard to Duhe's reconventional demand, Lenter admitted to withholding Duhe's indemnity payments after his termination; however, he claimed that he repaid all of the withheld indemnity benefits to Duhe eventually (half in the summer of 2017 and half in January 2018 after the reconventional demand was filed). Again, Lenter claimed that his proof of the repayment was outside in his car; and Duhe disputed this testimony, alleging that he was still owed $1,210.00. As trier of fact, the WCJ is free to accept or reject, in whole or in part, the testimony of any witness. State v. Lutz, 17-0425, p. 18 (La. App. 1 Cir. 11/1/17), 235 So.3d 1114, 1126, writ denied, 17-2011 (La. 8/31/18), 251 So.3d 411. We cannot say that the WCJ's conclusion that Lenter did not prove repayment of the withheld indemnity benefits is manifestly erroneous or clearly wrong.
Finally, although Duhe filed an answer to the appeal requesting attorney fees for work performed on the appeal, he did not brief this issue, either in his answer to the appeal or in his appellate brief. Duhe's answer to the appeal contains no assignments of error and simply states: "[P]ursuant to Louisiana Code of Civil Procedure Article 2133, [Duhe] requests that this Honorable Court award claimant-appellee his costs, including attorney's fees, incurred in opposing the appeal of the intervener-appellant herein." His appellate brief likewise does not address the answer to the appeal. Accordingly, this issue has been abandoned because Duhe did not brief his answer to the appeal with argument or citation of authority to support his assertion. Under U.R.C.A. 2-12.4(B)(4), this court may consider as abandoned any assignment of error that has not been briefed. State v. Wilson, 13-996, pp. 8-9 (La. App. 5 Cir. 5/21/14), 142 So.3d 275, 279-80. Because Duhe has failed to brief his answer to the appeal requesting costs and attorney fees, we consider it abandoned.
CONCLUSION
For the reasons set forth herein, we affirm the February 9, 2018 judgment dismissing Robert A. Lenter's intervention and motions with prejudice and granting *735 Raydell Duhe, Sr.'s reconventional demand ordering Lenter to repay Duhe $1,210.00, and deny Duhe's answer to the appeal seeking costs and attorney fees for work done on appeal. Costs of this appeal are assessed to the intervenor-appellant, Robert A. Lenter.
AFFIRMED; ANSWER TO APPEAL DENIED.

Louisiana Revised Statutes 23:1141 provides:
A. Claims of attorneys for legal services arising under this Chapter shall not be enforceable unless reviewed and approved by a workers' compensation judge. If so approved, such claims shall have a privilege upon the compensation payable or awarded, but shall be paid therefrom only in the manner fixed by the workers' compensation judge. No privilege shall exist or be approved by a workers' compensation judge on injury benefits as provided in R.S. 23:1221(4)(s).
B. The fees of an attorney who renders service for an employee coming under this Chapter shall not exceed twenty percent of the amount recovered.

The amount of $322,301.05 is the total of all indemnity benefits and all medical benefits paid on Duhe's claim prior to the December 1, 2017 settlement, including the benefits paid after Lenter was terminated.

Following the filing of the reconventional demand, Lenter sent Duhe two checks for $605.00 each, leaving a remaining unpaid balance of $1,210.00.

In the earlier instance, Duhe testified that he agreed to rehire Lenter based upon an agreement to reduce the attorney fees deducted from his indemnity benefits to ten percent.

Lenter acknowledged that he never produced Duhe's file as requested on numerous occasions. He described the file as containing over 2,000 pages, and explained that he had been ill, he had no secretary, his office was in "total disarray," and the file was "in two, possibly three different places." As a result, he testified that "it took quite awhile [sic] to put everything together to make sure I had the majority of my documents from Mr. Duhe's file together." Lenter also attempted to justify his failure to produce the file by pointing out that Dill was able to reconstruct the majority of the file. Nevertheless, he claimed that the file was outside in his car, and he would give it to Dill after the hearing.

The final judgment signed by the WCJ on February 9, 2018, contains a handwritten notation, initialed by the WO, that "Duhe's post trial (sic) adopted as reasons for judgment." The Post-Trial Memorandum filed on behalf of Duhe and Workers' Compensation, L.L.C. submits that Lenter was terminated for cause.